## CHARLESTON

### LEWIS v. W. VA. PULP AND PAPER CO.

Submitted March 9, 1915.    Decided March 30, 1915.

1. CONTRACTS—*Essence—Time.*
   Ordinarily time is not of the essence of a contract, unless made
   so by its terms, or unless it is an element of a mere condition
   precedent.   (p. 105).

2. SAME—*Breach—Renunciation—Effect.*
   An absolute renunciation of a contract by one of the parties
   thereto constitutes a breach thereof and also relieves the other from
   performance of his promise or covenant.   (p. 106).

(LYNCH, JUDGE, absent.)

Error to Circuit Court, Pocahontas County.

Action by J. W. Lewis against the West Virginia Pulp &
Paper Company.    Judgment for defendant, and plaintiff
brings error.

*Reversed and remanded.*

*N. C. McNeil,* for plaintiff in error.

*L. M. McClintic,* for defendant in error.

POFFENBARGER, JUDGE:

Lewis' judgment for $49.41, recovered in a justice's court,
was carried into the circuit court by an appeal.    The total
amount claimed in his bill of particulars is $110.60.    On the
conclusion of his evidence a verdict against him was found by
direction of the court, and the judgment to which he obtained
this writ of error was rendered in accordance with the verdict.

Taken as true, under the rule applicable to motions to
exclude, they being in some respects the equivalent of

demurrers, the plaintiff's evidence established the following facts: In May 1913, he was at a point near Nashville, Georgia, and, having seen, in an industrial publication, an advertisement by the defendant, for a skilled workman, called a crane-man, the operator of the crane of a steam shovel, he wrote a letter to the company, in which he either tendered his services or made an inquiry. In response thereto, he received a telegram saying the company needed a crane-man and would give him a position, provided he came at once. This telegram was received on May 16, and on the next day he replied by telegram, that he would leave on Tuesday and arrive at Cass, W. Va. on Thursday. He was then advised that it would be satisfactory, if he should arrive on Thursday. With this understanding, he started on Tuesday morning, but, in consequence of the delay of his train at a place called Jessup, Georgia, he missed a connection. On his arrival at Richmond, Va., he communicated this fact to the superintendent by wire, and proceeded on his journey, arriving on Friday afternoon instead of Thursday, and immediately reported to the superintendent; but, in the mean time another man had been given the place conditionally promised him. On the next morning, Saturday, he and the superintendent went by the same train, but not together, to the place at which the company's steam shovel was then working, but no work was assigned to him. That evening, he called upon the superintendent again, who suggested work for him at another place on Elk River. On the following Tuesday, they went to that place, but, on account of the difficulty of obtaining a boarding place suitable for his wife and child, it was suggested that he take a position as foreman of carpenters at a place called Spruce. The superintendent having refused to agree with him in advance as to the amount of his compensation, he did not take that place. With knowledge of the defendant's superintendent, he remained at Spruce the balance of the week, ready for work. On Saturday, the departure of the steam shovel engineer, for some reason, necessitated a reorganization of the force. The foreman took the place of the crane-man and the crane-man took the place of the engineer. On Monday, a new engineer came upon the grounds and the crane-man quit, but the plaintiff was not called to take the position, in

anticipation of which he had come to the defendant's works under the conditions and understanding already stated. On that day, he instituted his action for damages, and, on the second day thereafter, he was offered the position, but declined it.

The delay in arrival did not justify refusal of the promised employment. There was, of course, an absolute undertaking as to the time of the beginning of the journey, but none as to its completion. That the plaintiff had no control of the means of travel and that railway trains are sometimes unavoidably delayed were facts well known to both parties and in view of which they obviously contracted. As to the arrival, the contract was, therefore, manifestly conditional upon the maintenance by the railroads of their published schedules and connections. The beginning of the journey was within the absolute power and control of the plaintiff. Its completion was not. It would be too much to suppose he intended to assume the risk of the failure of railway connections, without an express agreement on his part to do so. Acceptance of the offered position and entry upon the journey necessitated the giving up of his residence, disposal of his household goods or the expense of their shipment, abandonment of the position he then had and the expense of a 1300 mile trip. It is highly improbable that he would have accepted the offer, if he had been told he must guarantee his arrival on schedule time. Both parties could well assume the connections would be made and both knew the delays incident to travel are ordinarily not of such length as to make them material. The time within which an act is to be done is not always essential, and, when the time specified for performance of a contract is relatively unimportant, it is not of the essence thereof, unless made so in express terms, or it appears to be a condition rather than a covenant. *Adams* v. *Railway Co.*, 64 W. Va. 181. No terms used by the parties imported intent to make the time of arrival essential. Though the plaintiff promised to arrive on Thursday and the defendant expressed satisfaction with that date, neither used any word signifying intent to make the contract depend upon that fact for its binding force or validity. On the contrary, the defendant's conduct indicated allowance of reasonable latitude as to time. It first said come

at once and then allowed a day or two for preparation. Arrival on Thursday was not made a condition of the contract to give employment. It was an element or factor in performance. The agreement was concluded before the plaintiff left Georgia. He agreed to come and work and his failure to do so would have given the defendant a right of action against him.

Neither the offer of employment different from that promised nor of the promised employment, after what the jury could well say was tantamount to an absolue refusal, could avert the consequences of the breach. An absolute refusal by one party to a contract to perform it releases the other. *Swiger* v. *Hayman*, 56 W. Va. 123; *Shaw* v. *Life Ins. Co.*, 69 N. Y. 286; *Traver* y. *Halstead*, 23 Wend. 66.

Being clearly erroneous, the judgment will be reversed, the verdict set aside and the case remanded for a new trial

*Reversed and remanded.*