# CHARLESTON.

CHANNELL BROTHERS v. W. VA. PULP & PAPER CO.

Submitted January 18, 1916.    Decided January 25, 1916.

1. PRINCIPAL AND AGENT—*Implied Power of Agent.*

    Authority vested in an agent to accomplish stated results, for and on behalf of his principal, includes by implication power to do whatever is reasonably necessary to the effectuation thereof, in the usual and customary way.  (p. 496).

2. SAME—*Implied Authority of Agent—Supplies Furnished to Contractor.*

    Authority in an agent to conduct a business of which the making of working contracts is an incident, has implied power to make an original promise to a stranger to pay for supplies furnished by him to contractors for the work, as a means of enabling them to perform their contracts.  (p. 496).

3. GUARANTY—*Promise to Pay Debt—Original or Collateral Promise—Determination.*

    Whether an oral promise to pay one person for merchandise delivered to another, is original or collateral, depends upon the

intention of the parties, to be ascertained from their situation and conduct, the words of the promise and, all the circumstances attending the transaction. (p. 496).

4. TRIAL—*Instructions—Ignoring Evidence.*

Instructions given on the trial of such an issue, requiring the jury to make their finding depend upon certain inconclusive facts constituting only a part of what transpired between the parties, are erroneous and prejudicial. (p. 497).

5. DEPOSITIONS—*Use by Opposite Party—Admissions.*

A party desiring to avail himself of admissions found in depositions taken by the opposite party, should not be required to read such depositions in their entirety, but only so much thereof, in addition to the admissions, as pertains to, and qualifies or explains, them. (p. 498).

Error to Circuit Court, Randolph County.

Action by Channell Bros. against the West Virginia Pulp & Paper Company. Judgment for defendant, and plaintiff brings error.

*Reversed and remanded, and new trial awarded.*

*W. B. & E. L. Maxwell,* for plaintiffs in error.

*Talbott & Hoover,* for defendant in error.

POFFENBARGER, JUDGE:

The claim of the plaintiffs for the price and value of merchandise delivered by them to a person other than the defendant, based on the theory of an original promise by the defendant to pay for it, was disallowed by the jury and judgment rendered in accordance with the verdict. They claim erroneous instructions given by the court occasioned this adverse result.

Oxley, the party to whom the merchandise, feed for horses, was furnished, was engaged in the work of hauling pulp-wood for the defendant. For some time, credit was admittedly extended to him, but, according to testimony of the plaintiffs, he failed to pay promptly, and they say, in substance, that doubting his responsibility and good intentions, they notified Williams, the defendant's superintendent, of their unwillingness to extend him, (Oxley), further credit, and that thereupon Williams told them to let him have feed and

look to his principal for payment of their bills for it. The version of one of the plaintiffs is that Williams said "You let him have what he needs and book it to us, as we are good for it." The other says he told them to charge the account to him—"That he guessed the West Virginia Pulp and Paper Company was good for it;" and, further, that "He, (Oxley), had to have feed to work for them. He was hauling for them, and he guessed that they were good for it." Another witness testifies to the same conversation, and Oxley says Williams told him he would arrange with the plaintiffs for such feed as he would need. The plaintiffs say they charged to the defendant the goods furnished Oxley after this arrangement had been made with Williams. The account in the plaintiffs' book, as it was when introduced on the trial, stood in the name of the defendant, but two witnesses swear they had seen the account sometime before the trial and that it then stood in the name of Oxley, and, further that, on the trial in the justice's court, the account was headed "West Virginia Pulp and Paper Company by E. E. Williams for John Oxley." They and other witnesses say the heading of the account, as produced on the trial in the circuit court, bore evidence of alteration. Four monthly statements of the account, one against E. E. Williams and three against E. E. Williams for Oxley, were rendered to the defendant. There is also evidence that one of the plaintiffs had said the statement and book corresponded.

The agency of Williams is admitted, but his authority to guarantee accounts of employees is denied by himself and the secretary of a subsidiary of the defendant company. However, neither of them says there was any specific inhibition of such acts. Fairly interpreted, their evidence is that no specific authority to do so was given, and that, in their opinion, the act imputed to the agent was not within his general authority as manager and superintendent. Williams says his duties were "Contracting, manufacturing and shipping pulp wood" for the defendant. Beaston says he was employed "As superintendent of our pulp wood operation at Mill Creek, West Virginia." As superintendent, he made such contracts as were incident to the general management and operation of the plant, often in his own name, and paid bills with his per-

sonal checks.  He denies having made the agreement imputed him, respecting the supplies for Oxley, but admits an agreement to pay his bills to the extent of the money due him from the company, as his work was performed.

Guaranties and suretyships were not within the scope of the business of the defendant and could not, therefore, have come within the managing authority of its superintendent. *Haupt* v. *Vint*, 68 W. Va. 657.  But, if the promise alleged to have been made was original and not collateral, the debt was made by the defendant itself, notwithstanding the incidental benefit derived from it by the employee, and it was not one of guaranty or suretyship.  It could not be both collateral and original.  The two qualities are incompatible. If the evidence as to its character is sufficient to carry that question to the jury, the promise, if made, may be within the agent's authority generally to manage and conduct the business of contracting, manufacturing and shipping pulp-wood. Oxley's hauling was a matter under his supervision and control.  He had employed him and was paying him for the work. What exigency of the business may have rendered it reasonably necessary, as an act in furtherance of the business, to purchase feed for the employee and risk the sufficiency of his earnings to compensate for it, if any, is not disclosed, but that there may have been one is readily conceivable.  To make out authority to provide for such a case, it is not necessary to prove its existence.  The superintendent had authority to conduct the business and that, on well settled principles, impliedly carried power to do whatever was reasonably necessary to effectuate the result, in the usual and customary manner.  *Rohrbough* v. *Express Co.*, 50 W. Va. 176; *Townshend* v. *Shaffer*, 30 W. Va. 176.  Power to purchase supplies for an employee and have them delivered to him by the vendor is not essentially different from power to advance them on the contract, out of the principal's own store or stock, and such advancements on account of working contracts are not unusual.  Hence, implied authority to make the original promise alleged is obvious.

The question developed by the evidence was one of intention.  No single act of the plaintiffs disclosed by it was conclusive.  The forms of the book account and statements

rendered were mere circumstances bearing on the question of intent. They are to be considered in connection with the oral evidence and the demands made upon the defendant for payment. The statements made out in the name of Williams were rendered to his principal, and he often made contracts and paid bills, for and on behalf of the company, in his own name, if the testimony of some of the witnesses is true. Out of all the circumstances, arose a question of intent for jury determination. *Johnson* v. *Bank,* 60 W. Va. 320; *Bank Note Co.* v. *Shrader,* 70 W. Va. 475; *Repair* v. *Krebbs Lumber Co.,* 73 W. Va. 139.

Two of the instructions given at the instance of the defendant unduly narrowed the range of jury inquiry. No. 2 required them to find for the defendant, if they believed the plaintiffs had originally charged the account to Williams and afterwards erased his name and inserted that of the defendant. No. 3 directed a finding for the defendant, if the jury should believe Williams directed Oxley's account to be charged to him and it was so charged, as the items were furnished, and afterwards changed. These circumstances were not conclusive. No. 4, submitting hypothetically two alternative theories of possible liability and requiring the finding of one or the other, as an essential condition of right of recovery, was misleading. It was not necessary to find that the goods had been originally charged to the defendant, nor was it necessary to prove an express assumption on the part of the defendant, to pay, at the time the debt was created. The previous request to furnish the goods, accompanied by the promise to pay, and plaintiffs' reliance upon the promise, were amply sufficient to warrant a recovery, without an assumption of the debt, "at the time it was created." All three of these instructions were erroneous and prejudicial.

The plaintiffs were permitted to read to the jury certain admissions made in depositions taken by the defendant, on condition that they so read, in connection therewith, the portions of the testimony upon which they did not wish to rely, the adverse portions; and then the defendant was permitted to read them over again to the jury. To the refusal of the court to permit the reading of only such portions as they desired and its permission of the second reading, the plain-

tiffs excepted.  In this we perceive no reversible error, if any at all.  As to such matters, the trial court has considerable discretionary power.  However, it would be more agreeable to the principle governing proof of admissions, to require the party seeking their benefit to read only so much of the adverse matter as pertains to, and qualifies or explains, the admissions.

For the noted errors in rulings on instructions, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded, and new trial awarded.*