# CHARLESTON.

FRANK RUA v. BOWYER SMOKELESS COAL COMPANY.

Submitted April 15, 1919.    Decided April 22, 1919.

1. FRAUDS, STATUTE OF—*Contract—Performance within One Year.*

    A contract the performance of which neither by its terms nor by necessary implication is to be extended beyond the period of one year and admits of performance within that time, is not within the statute of frauds. (p. 54).

2. SAME—*Contract to be Performed Within One Year—Evidence.*

    To properly construe such a contract with reference to the statute of frauds the subject matter of the contract, the character of the work contracted for, and the contingencies that may arise during the progress of the work, should be taken into consideration, and if it is possible that the contract may be performed and not be extended beyond a year, it is not within the statute. (p. 54).

3. EVIDENCE—*Parol Contracts—Certainty—Determination.*

    Where the contract, originally verbal, is subsequently ratified or covered by letters and telegrams between the parties, which describe the subject matter of the contract in general terms, the court in construing the contract may go outside of the writings for the purpose of identification of the subject matter, and if it can be so definitely ascertained, the contract is not void for uncertainty. (p. 55).

4. MASTER AND SERVANT—*Contract of Employment—Certainty.*

    If a contract, verbal or written, is one of general employment, or to do a particular kind of work, or is one of permanent em-

84 W. Va.

ployment, and which the parties could not have intended to run beyond the life of the contracting party or the time when he ceases to properly perform the work, or other contingency likely or possible to occur during its progress, it is not void for uncertainty of time.   (p. 56).

5.   SAME—*Contract of Employment—Compensation for Breach—Certainty and Time.*

The measure of damages for breach of a contract so uncertain in point of time is the sum due the plaintiff for work done under the contract, if any, together with compensation for such future benefits as under all the circumstances would probably have been realized by him in its performance.   (p. 57).

6.   PRINCIPAL AND AGENT—*Contracts of Employment—Authority of Superintendent.*

The superintendent of a coal mining operation in charge of the work impliedly has authority to employ and discharge workmen and to make contracts necessary to properly carry on the business of mining coal intrusted to him; but without specific authority he has no implied authority to make a contract to extend beyond a reasonable time, and necessary to the successful operation of the mine by him.   (p. 57).

Error to Circuit Court, Raleigh County.

Action by Frank Rua against the Bowyer Smokeless Coal Company.   Judgment for defendant and plaintiff brings error.

*Reversed and remanded.*

*Sanders, Crockett & Kee,* for plaintiff in error.
*Bumgardner & Preston* and *C. O. Dunn,* for defendant in error.

MILLER, PRESIDENT:

Plaintiff sued for damages for alleged breaches by defendant of a contract alleged to have been entered into between the parties in January 1918, whereby in consideration of the plaintiff's promise that he would furnish the labor, tools, explosives, means and appliances and drive four rock headings in a certain coal mine of the defendant, six feet in height and twelve feet in width and to the depth limited by the coal holdings of defendant, approximately four thousand feet, the defendant undertook and promised on its part to

pay plaintiff therefor at the rate of fourteen dollars per lineal yard for each and every yard so driven by him, the payments to be made on the regular semi-monthly pay days, for the work accomplished by him pursuant to the contract, prior thereto.

And it is further averred that plaintiff, then a resident of Virginia, upon making said contract and relying thereon, immediately proceeded with his preparations to perform the contract on his part, and to that end secured the necessary tools, supplies, equipment and appliances, and employed laborers and workmen necessary to carry out the provisions of the contract on his part, and completed said arrangements, and was thereupon ready, able and willing to proceed with the work, and to complete the contract in the manner and upon the terms and to the end provided and stipulated, and if he had been permitted to proceed with the performance of his contract, he could and would have driven under and pursuant thereto at least four thousand lineal yards of the rock heading, at a cost to him of nine dollars per yard.

And by way of assigning a breach of the contract, it is further averred that defendant wholly disregarded the promises and undertakings on its part, and artfully contriving and intending to wrong, injure, oppress and defraud plaintiff in that behalf, did wrongfully, without justification or lawful excuse, and without fault on plaintiff's part, renounce and repudiate the same, and to further wrong, injure and oppress him, and to deprive him of the benefits of his contract, would not permit plaintiff to enter upon and continue the performance of the contract on his part, but on the contrary ordered him to stop any further proceedings and not to present himself at the mine, and without his knowledge or consent let said contract to another person, to his damage $20,000.00; and not regarding its said promises and undertakings had not paid plaintiff the sum or sums of money due him, although often requested etc., wherefore his suit.

The defense was non-assumpsit and the statute of frauds. On the trial before the jury, on the issue joined on the plea of non-assumpsit, after plaintiff had introduced all his evidence and rested, defendant moved the court to strike out

all of plaintiff's evidence relative to any contract between him and it which had not been performed within one year, and pending said motion to strike out, plaintiff, on his motion and over objection by defendant, was permitted to amend his declaration by adding the common counts in assumpsit with bill of particulars attached. Thereupon defendant moved the court to strike out all of plaintiff's evidence and direct a verdict in its favor, which motion, over plaintiff's objection, was sustained, and a verdict in accordance therewith was returned by the jury; whereupon, after plaintiff's motion for a new trial was overruled, the judgment of nil capiat complained of was pronounced.

The bill of particulars filed with the amended declaration laid a claim against defendant for three days time lost in visiting defendant's mine, at $20.00 per day, $60.00; for twelve days time lost in looking up and employing men at $20.00 per day, $240.00; for wages paid Angelo Toledo and Dan Cannans, twelve days each, at six dollars per day, $144.00; for board of fourteen men and two women, three days, at $1.00 per day, $48.00; for removing furniture to station and returning same to miner's home, $12.00; for getting tools out of mine and time of laborers for the work, $15.00; for expenses of self to Bowyer, $16.60; for three days loss of time, $72.00; making a total of $607.60.

We think it is apparent, indeed it is conceded, that the rulings of the circuit court in striking out plaintiff's evidence and directing a verdict were predicated on the theory that the contract alleged and sought to be proved was not to be performed within one year and was not evidenced by a writing signed by defendant or its authorized agent, and was void under the statute of frauds, chapter 98 of the Code, and wholly without binding obligation upon the defendant.

The evidence shows that the contract was invited by a letter written on one of the letter heads of the defendant company, dated at Bowyer, September 26, 1917, addressed to Mr. Frank Rhu, Kimball, W. Va., and signed Bowyer Smokeless Coal Co., F. L. Heinze, Supt., as follows: "We have some slate to be shot here in our mines and will have through the life of the place. Mr. Hopkins, who was mine foreman at Rolfe has recommended you as a good slate man.

Would be pleased to have you come over to look at the work and bid on same." To a letter of inquiry addressed to defendant by plaintiff on December 5, 1917, Heinze, Superintendent, replied on December 11, 1917: "Dear Sir:-Your favor of the 5th. Have two main entries where slate must be shot, also two rock headings. Will be pleased to have you come and bid on this work." On January 13, 1918, in response to these letters of invitation, plaintiff in company with one Cannans, whom he took along to assist him in judging the character and value of the work, met Heinze, Superintendent, and after being shown the four headings by Hopkins, to whom Heinze had referred in his letter of September 26th, and as directed by Heinze, the three men returned to the superintendent's house at Bowyer, where plaintiff says, after a preliminary colloquium, he proposed to Heinze to do the work of driving these four entries, six feet in height, twelve feet in width, and about a thousand yards each through the mine, at the price of fourteen dollars per lineal yard, which proposition was then and there accepted by Heinze on behalf of defendant. He also says Heinze thought there would be work for three or four years, right straight through. He further swears that the agreement was that he was to begin January 21, 1918, and that he was to do double shift work, that is, work night and day with two shifts of men, and was to prosecute the work as rapidly as possible. Plaintiff, in his statement of this contract, is fully corroborated by the evidence of Hopkins, mine foreman of defendant, detailed by Heinze, Superintendent, to take him to the mines and show him the property and the work on which he was requested by Heinze to make a bid.

This and other evidence in the record, in our opinion, clearly constitutes an oral agreement between Heinze, Superintendent, professing to act for and on behalf of the defendant company, and the plaintiff Rua, substantially as alleged in the declaration. If anything was left uncertain in the contract, it was the time the contract was to run. It seems to have been in the mind of Heinze at the time of the making of the agreement that there would be work for Rua during the life of the mine, and it seems to have been his opinion that

it would take from three to four years to do all the work. Otherwise the time during which the contract was to continue was not mentioned. It was the expressed opinion of Heinze, and plaintiff was also of the opinion, that it would take several years to do all the work, working in the ordinary way. But no time was stipulated in the contract.

But plaintiff did not rely alone on the oral agreement so established. He introduced in evidence a number of letters. and telegrams to which defendant's name was signed by Heinze, Superintendent, and his replies thereto as follows: Letter dated January 14, 1918, saying: "Since making contract with you, I learn that the Government is about to take charge of all mines and close the smaller ones. Our mine may come under the head of small mines and be one of the ones closed down. At any rate, I have been advised by our Pres. not to make any contracts whatever for the next month until we see just what the Government will do, so I am obliged to• cancel the work given you for the present." Another letter, dated January 19, 1918, received January 23, 1918, saying: "Since writing you I am informed that there is no danger of us being shut down by the Government and I want you to come on here at once to start those main headings of ours, price per yard to be $14.00 per yard as agreed upon when you were here. Let me know at once when to expect you and how many men you will bring with you." Telegram of plaintiff, dated January 23, 1918, addressed to Heinze, Supt., Bowyer Smokeless Coal Company, saying: "Will be there Saturday with fourteen men have two houses." A telegram dated Sullivan, W. Va., January 21, to plaintiff, saying: "Come at once bring at least eight men contract as agreed on Bowyer." Telegram dated January 23, 1918, addressed to plaintiff and signed by Heinze, as follows: "Wire received too late have given contract to another party." Telegram dated January 24, 1918, by plaintiff sent to F. L. Heinze, Supt., Bowyer Smokeless Coal Co., saying. "Received letter yesterday telling come at once & today telegraph not to already got two family's furniture shipped tools all answer." Telegram dated January 24, 1918, signed Bowyer Smokeless Coal Co., addressed to plaintiff,

saying: "Letter to Hopkins delayed on receiving no answer from you we let contract to another party." In addition to these documents plaintiff offered two letters, one from his counsel, Messrs. Sanders, Crockett & Kee, dated February 25, 1918, addressed to the defendant company, calling its attention to the contract, and its breaches thereof, inviting a proposition of settlement, which would be considered, and saying that if no offer was made, a suit would be instituted against it; also the reply to said letter, signed by C. R. Stahl, Vice-President: "Our superintendent gave a contract to an Italian presumably your Frank Rua for the performance of certain work at our mine. This contract was repudiated by the writer who is general manager of the company and as such has legal right to nullify contracts entered into by the superintendent.

"We think your man has no basis for suit. We have no desire, however, to work a hardship on anyone and if Mr. Rua acting in good faith has been subject to loss we will consider rendering him just compensation for such loss, or if he prefers, we will consider giving him employment and his men on the same or another contract."

This correspondence between plaintiff's counsel and defendant was introduced simply to show defendant's acknowledgment of the making of the contract on its behalf by Heinze. The letter of counsel was rejected; the defendants letter was admitted, but was limited to the fact of such acknowledgment.

The question is thus presented, whether the contract alleged and proven is void by the statute of frauds? Assuming it to be a verbal contract and not a written one, it is affirmed by counsel for defendant: First, that by its terms or by necessary implication its full performance would require more than a year; Second, that admitting the telegrams and letters as evidence of a written contract, or a verification of the previous oral agreement, the subject matter of the contract is not sufficiently identified; and, Third, that the time or duration of the contract is so indefinite and uncertain as to render the contract incapable of specific performance, or constitute the business of a suit for damages for breach thereof by defendant.

On the first proposition, neither the contract alleged nor the one proven by specific terms nor by necessary implication extended its performance beyond a year. Where this is the case, it does not matter that the parties may have thought or held the opinion that work under the contract might be extended beyond that period. It will not thereby be rendered void under the statute. *Reckley* v. *Zenn*, 74 W. Va. 43; *McClanahan* v. *Coal & Mining Co., Id.* 543; *Kimmins* v. *Oldham*, 27 W. Va. 258. A contract is not brought within the terms of the statute because it was not expected to be performed within a year, if it is one that under all the circumstances admits of performance within a year. *Warren etc. Mfg. Co.* v. *Holbrook*, 118 N. Y. 586, 16 Amer. St. Rep. 788, and note; *Dant* v. *Head*, 90 Ky. 255, 29 Amer. St. Rep. 369, and note.

To properly construe the contract and determine whether by necessary implication the full performance thereof on the part of plaintiff was to extend beyond a year, we must have reference to the character of the work contracted for, the uncertainty of life and health, the possible exegencies that might and frequently do occur in mining operations, as that the coal should run out, a fault occur in the mine, or the coal become thin and unworkable, or the mine become flooded with water, so as to be incapable of operation; these and many other contingencies that might arise, if within the term of one year, would bring its performance within the statutory period. Can it be said then that the parties contemplated or that the contract would require plaintiff to continue to drive the entries beyond the happening of such contingencies? Certainly the contract here cannot be given such a construction. The law is that if an agreement whose performance would otherwise extend beyond a year, may be completely performed within a year on the happening of some contingency, it is not within the statute of frauds. *Carnig* v. *Carr*, 167 Mass. 544, 57 Amer. St. Rep. 488, 490, and cases cited; *Reckley* v. *Zenn, supra*. In *Carnig* v. *Carr, supra*, involving a contract for permanent employment, it was said, apropos to the present discussion, that "to ascertain what the parties

intended by 'permanent employment' it is necessary to consider the circumstances surrounding the making of the contract, its subject, the situation and relation of the parties, and the sense in which, taking these things into account, the words would be commonly understood.''

But, assuming the authority of Heinze, Superintendent, does the contract pleaded and proven depend on the prior oral agreement, as contended by defendant, or is it embodied in the letters and telegrams inviting the contract and referring thereto, affirming the same, as claimed by plaintiff? If Heinze had authority to make any contract for all or any part of the work which plaintiff contracted to do, and the subject matter and terms of the contract and its duration were sufficiently definite and certain as to be capable of enforcement within legal rules and principles applicable, then the contract does not fall within the statute of frauds. It is suggested that these letters and telegrams referred to no particular mine or entries. The letter of Heinze of September 26, 1917, refers to "slate to be shot here in our mines," that is, at Bowyer, Raleigh County, W. Va., the place where the letter purports to have been written and posted; and the letter invited plaintiff to come over here and look at the work to be done. Does not the defendant's *mines* at Bowyer sufficiently identify the property on which the work was to be done, no matter how many mines defendant may have had there? Plaintiff did go to Bowyer, and was shown the mines and entries or headings thereof by Hopkins. The subsequent letters written by Heinze refer to the mines at Bowyer, or to the contract made, or headings of the mines, and one or two repeat the price agreed upon for the work. In *White v. Core,* 20 W. Va. 272, the contract relied on was a receipt given by Core for a part of the purchase money for land previously sold, and where the land was identified simply as the land purchased of Core, with the agreement that Core was to divide said land and let White have the lower half thereof. It was said in that case that in a contract for the sale of land, the court may go outside of the writing for the purpose of identifying and ascertaining the land sold, where general words of description capable of being made certain

are used in the writing. This case is directly in point on the proposition under discussion. And these letters and telegrams, we think, are so related to one another as to constitute together written evidence of the contract, taking it out of the statute of frauds. *Cobb* v. *Glenn Boom & Lumber Co.*, 57 W. Va. 49, point 2 of the syllabus. See also, *Johnson* v. *Ronald's Admr.*, 4 Munf. 77.

But how about the certainty of the time of the contract? Plaintiff at the time of suit had not entered upon the contract; he was prevented from doing so by defendant's action. He says he was to have begun the work January 21st, and would have been able to do so, but was delayed by the letter from Heinze anticipating interference by the Government, but in a day or two recalled that action and directed plaintiff to come on with men etc. The excuse given plaintiff in one of Heinze's last letters for breaching the contract was the delay in getting one of plaintiff's letters, promptly written and posted. Ordinarily time, unless so expressly stipulated, is not of the essence of the contract. Reasonable time to begin is implied. *Lewis* v. *W. Va. Pulp & Paper Co.*, 76 W. Va. 103. No time for the continuance of the contract was stipulated. All that was said was the expression of opinion of Heinze that there would be work for three or four years. What did the parties intend by the contract as to time? The books say that a contract for permanent employment is not void for uncertainty. *Rhoades* v. *C. & O. Railway Co.*, 49 W. Va. 494; *Carnig* v. *Carr, supra;* 2 Page on Contracts, § 676. Nor is a contract to employ one as long as he is able to do, and does do, faithful work. 1 Page on Contracts, § 416, p. 656, and cases cited. The work contracted for in this case was to be done and performed by the lineal yard. Clearly, the parties did not contemplate that the time should extend beyond the life of the plaintiff, or the life of the mine, or the defendant's ability to work it profitable or at all, nor beyond the time when plaintiff should cease promptly and skilfully to execute the work. But if the contract amounted to no more than a general employment, the parties must have intended it to continue for such reasonable time, considering the preparations plaintiff was

required to make and the expenses to which he would be put, as would make the undertaking reasonably profitable to him under all the circumstances, a question of fact which we think should have been submitted to the jury. *Rhoades* v. *Railway Co.. supra*, 35 L. R. A. 512, and notes.

The measure of damages in such cases of uncertainty as to time, according to the authorities, is any sum due plaintiff for work done, together with compensation for the future benefits which he would probably have realized under the contract, with proper deductions, if any. Same case; 3 Sutherland on Damages (4th ed.), § 692; 2 Sedgwick on Damages (9th ed.), § 666.

But the correctness or incorrectness of the judgment below, nevertheless, depends upon the question of the authority of Heinze to make the contract and thereby bind the defendant company. Did he have such authority, or authority to bind defendant to any extent, as he undertook to do? The only evidence of authority is what may be implied from the fact that he was superintendent, was in charge of the work, and was acknowledged by defendant's vice-president in one of his letters as the one who made the contract with plaintiff, but which he claimed authority to nullify. Whether or not he had such authority to annul is no better established than the authority of Heinze to make the contract sued on. The question of. authority and its scope has not been sufficiently developed by the evidence to enable us to reach any certain or satisfactory conclusion on that question.

But the fact that Heinze was superintendent and acknowledged to be such by the vice-president in his letter to plaintiff's counsel, imports some authority to make contracts to carry on the work at defendant's mines. The office of superintendent implies some authority to employ and discharge workmen, and to do such other things as under all the circumstances reasonably may be required, the extent thereof. depending in some degree on the way the business has been previously conducted and managed by him. And whether a particular contract falls within such implied powers of an officer depends upon whether or not it is within the scope of the ordinary business intrusted to his management. *Car-*

*roll-Cross Coal Co.* v. *Abrams Creek Coal & Coke Co.,* 83 W. Va. 205, 98 S. E. 148; *George De Witt Shoe Co.* v. *Adkins,* 83 W. Va. 267, 98 S. E. 209. To what extent the business of the defendant had been delegated to Heinze prior to the contract with plaintiff, the record does not show. That will likely be developed on another trial. If prior to that contract Heinze, with the knowledge and consent of defendant, had been exercising plenary powers in the employment of workmen and making of contracts, the defendant, we think, would be bound by the contract with plaintiff, extending for such reasonable time as the jury from all the facts shown in evidence might determine, but not to the full extent claimed by counsel for plaintiff, unless such authority was specifically conferred. If we are correct, plaintiff was entitled to nominal damages at least, and to such reasonable damages as he may have sustained in his preparation to enter upon and perform the contract, and it was error on the part of the trial court to deprive him of the right to a verdict of the jury on the issues presented on this phase of the case.

We are, therefore, of opinion to reverse the judgment, set aside the verdict, and award the plaintiff a new trial with costs in this court, the costs in the circuit court to abide the result of the new trial awarded.

*Reversed and remanded.*