# CHARLESTON.

THOMAS B. NAPIER v. MOZENA COAL COMPANY.

Submitted April 13, 1920.     Decided April 20, 1920.

1.  PLEADING—*Duplicity Not Ground for Demurrer.*

    The common law defect in pleading known as duplicity, being merely formal, is no longer a valid ground of demurrer in this state.   (p. 222).

2.  APPEAL AND ERROR—*Pleading—Where Particulars Contain Items Not Covered by Declaration, Improper to Admit Proof Thereof; Error Cured by Amendment.*

    Where a bill of particulars filed with a declaration in an action of assumpsit contains items not covered by the averments of the declaration, it is improper to admit proof as to such claims; but the error so committed is cured or rendered harmless by an amendment to the declaration, subsequently filed, including such items, if it appears that defendant was not prejudiced thereby.   (p. 222).

3.  CORPORATIONS—*Superintendent May Bind Company by Acts Impliedly Necessary to Effect Authorized Results.*

    The power of a superintendent to bind his principal, a corporation, is not restricted to acts and promises made within the scope of his express authority, but includes also such as are by implication reasonably necessary to effectuate the results authorized, in the usual and customary manner.   (p. 224).

4.  SAME—*Superintendent's Act is Within Implied Power if Necessary to Perform Authorized Duties.*

    Whether a particular contract falls within such implied power depends upon whether its execution is reasonably necessary to, and customary and usual in, the performance of the duties intrusted to him.   (p. 224).

. 5.   SAME—*Superintendent of Mine Has no Implied Power to Furnish Employe Money to Redeem Teams From Execution.*

A superintendent of mining operations, having authority to enter into working contracts, who employs another to haul coal for the company, generally does not have implied power to bind the company by a promise, additional to that for regular compensation, to furnish the employee a sum of money sufficient to enable him to redeem from execution and levy the teams with which he proposes to do the hauling.   (p. 224).

Error to Circuit Court, Wayne County.

Action of assumpsit by Thomas B. Napier against the Mozena Coal Company.   Verdict and judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*J. M. Rigg, Deegan & Bowman* and *Walter C. Williams,* for plaintiff in error.

LYNCH, JUDGE:

Mozena Coal Company, a mining corporation, has assigned one general and fourteen special grounds for reversal of the judgment rendered against it upon the verdict of a jury at the trial of an assumpsit action.   Some of the assignments require only brief mention, others none, upon this review.   The case as made by the declaration, demurred to and the demurrer overruled, is the breach by defendant of a contract of employment to haul coal by wagon and team for one year from defendant's coal mine to a railroad siding near Radnor and load it into cars at that point, for which defendant agreed to pay plaintiff at the rate of one dollar a ton of coal so hauled and loaded, and to advance to him money in an amount sufficient to discharge and satisfy a liability previously incurred by him in the purchase of the teams used in hauling the coal.

Plaintiff continued to perform the contract for about sixty days from March 1, 1918, and then ceased to do so only because of the levy of an execution upon and sale thereunder of his teams due to defendant's failure to advance the money promised by defendant to discharge that indebtedness, according to the promise so averred, notwithstanding plaintiff had faithfully kept and performed his part of the agreement and otherwise was

ready and willing to continue to do so, and but for such failure· on defendant's part would have done so, wherefore plaintiff lost the benefit of the profit that otherwise would have accrued to him, and has not yet received payment for all of the coal hauled and loaded as required by the contract, and therefore he sues, etc.

The chief objections urged in support of the demurrer are that the declaration does not aver a promise by defendant to reimburse plaintiff for the work he contracted to perform and in part performed by him before the sale of his teams under the execution, and the combination of two or more causes of action in the same count. · The declaration considered as a whole sufficiently avers such a promise and in that respect fully complies with the requirements of good pleading, and in it there appear averments of reciprocal contractual obligations—the plaintiff to haul coal for an agreed compensation based upon the tonnage hauled and loaded, and defendant to pay him the compensation so fixed and to furnish in advance of performance funds sufficient to prevent the interruption of the hauling process by an enforced sale of the teams used in performing the work so undertaken.

The demurrer was general and went to the whole of the declaration. If, as claimed, the count contains two inconsistent causes of action, one based upon defendant's promise to pay for the labor performed, the other upon its agreement to advance money for the purpose mentioned, the duplicity, if any, cannot be reached by a general demurrer in this state since the enactment of section 29, ch. 125. Code 1918. *Farmers' & Merchants' Bank of Reedsville* v. *Kingwood National Bank,* 85 W. Va. 371, 101 S. E. 734.

After plaintiff had introduced all of his evidence in chief, defendant, in the order stated and after successive adverse rulings thereon, moved, first, to exclude all the evidence relating to damages alleged to have been occasioned by a breach of the contract and especially that part thereof involving the promise to advance the money to exonerate the teams from the liability created by their purchase; second, all the evidence relative to damages sustained by reason of the hauling plaintiff would have done after the institution of the suit but for such failure;

and, third, all the evidence respecting each item of the bill of particulars except that for hauling 90 tons of coal. As much of the proof thus sought to be excluded tended to establish the right of plaintiff to recover the amount of claims in nowise referred to in the declaration, he tendered and the court over defendant's objection permitted him to file an amendment to the declaration so as to include these omitted items. This he did by these averments: "Plaintiff complains and says that in addition to the matters set forth in the original declaration in this case, which is here referred to and is to be read in connection with and as a part of this amended declaration, that he avers that the contract for the hauling of coal as set forth in said original declaration also included the items set forth in the bill of particulars filed with the original declaration (including a total of $72.50 for work done and materials furnished in preparing the road over which the hauling was to be done) * * * and that the defendant employed the plaintiff to furnish the said material and labor in connection with and as a part of said contract, and agreed and promised to pay for same the several amounts set forth above," etc.

Having attempted to establish a right to recover certain items of his account without notice to defendant by pleading or otherwise, except by bill of particulars filed with the original declaration, plaintiff afterwards sought to supply the omission by the amendment referred to. While the mode pursued to effect the intended purpose is not commendable because of its irregularity, yet to reverse for that cause would sacrifice substance for form, as the amendment merely incorporates in the pleading those items of the bill of particulars which were not included in the original declaration. Before the amendment it doubtless was improper to admit evidence to establish the validity of items not covered by the allegations of the original declaration. *Riley* v. *Jarvis,* 43 W. Va. 43; *Sandusky* v. *Oil Co.,* 63 W. Va. 260, 262. But that error was cured or rendered harmless by the amendment subsequently made to include such claims in the pleading. The bill of particulars gave notice that plaintiff might rely upon such items and by the procedure adopted make them part of his cause of action. Neither the method pursued nor the introduction of the subject matter in

this manner prejudiced defendant, so far as we are able to discern.

Defendant then also moved for a continuance of the case and for leave to file a specification of counter set-off against plaintiff's itemized account. These motions the court refused to allow, and without detriment or prejudice to defendant so far as can be perceived. The amendment wrought no alteration or change in the items of plaintiff's account; nothing was added that was not in it when first filed. And as the record does not show the nature of defendant's proposed specification of set-off, there is nothing to indicate that harmful results attended this adverse ruling. Besides, defendant had ample opportunity to contest plaintiff's account and was permitted to offer all the proof at its command by way of reducing the demand against it. These are merely minor or inconsequential irregularities in the proceeding and do not seriously affect the result obtained.

As the case now stands, that part of the contract relating to the work done by plaintiff in preparing the road bed so that it could be used for hauling purposes, and in hauling the coal to the railroad siding, clearly was within the general authority of the superintendent. The service performed by plaintiff and the expense incurred and paid by him at the express and admitted direction of Pyle, defendant's superintendent, for material and labor to make and the making of such minor but necessary repairs to the road, were part of the contract partially performed by plaintiff and constitute items of his contract, and if proved entitle him to compensation at least to that extent. No obligation devolved upon him to put or keep the road in serviceable condition as a haulage way at his own expense.

Neither O. C. Deegan, defendant's mine superintendent, with whom plaintiff says he contracted, nor Eric Pyle, Deegan's successor in the same capacity, had express authority to bind the company by the alleged promise to advance $800, the sum required to redeem the teams from indebtedness, a promise not definitely proved, and it is gravely doubtful whether either of them had implied authority to do so. Their duties as superintendents, it is true, according to the proof, related to the employment and discharge of men and to the general management and supervision of the particular portion of the business intrusted to

them. Their power to bind the corporation was not restricted solely to acts and promises made within the scope of their express authority, but included also such as were by implication reasonably necessary to effectuate the result authorized, in the usual and customary manner. They necessarily possessed authority requisite to enter into such contracts as were reasonable and usual in the operation of mines. But whether a particular contract falls within such implied power depends upon whether its execution is reasonably necessary to, and customary and usual in, the performance of the duties to be discharged by superintendeents. *McGuire* v. *Old Sweet Springs Co.,* 73 W. Va. 321; *Channell Brothers* v. *Pulp & Paper Co.,* 77 W. Va. 494; *Carroll-Cross Coal Co.* v. *Abrams Creek Coal & Coke Co.,* 83 W. Va. 205; *George De Witt Shoe Co.* v. *Adkins,* 83 W. Va. 267; *Rua* v. *Bowyer Smokeless Coal Co.,* 84 W. Va. 47, 99 S. E. 213.

In the case first cited this court recognized that there was no implied authority in the general manager of a corporation operating a summer hotel to make unusual, extraordinary or unnecessary contracts for labor, but held that the employment of a carpenter to reside on the ground and work out of season in making necessary repairs, usually made at such time, and to have the property in readiness for the coming season, was not unusual or unnecessary and therefore was within the implied power of the manager, though extending slightly beyond the term of his own employment. There was also some evidence to show express authorization of the employment by the president of the company.

There is apparent analogy between the facts of the second case cited and those found in this case. There it was held that an agent in charge of a business of which the making of contracts for the hauling of wood pulp was an incident had implied power to make an original promise, as distinguished from a guaranty, to a stranger to pay for supplies, feed for horses, furnished by him to those contracting for the hauling, as a means of enabling them to perform their contracts. But the court based its holding upon the fact that "power to purchase supplies for an employee and have them delivered to him by a vendor is not essentially different from power to advance them on

the contract out of the principal's own store or stock, and such advancements are not unusual."

There is, of course, a limit to the implied authority of a general manager or superintendent to bind the principal by agreements entered into as a means of keeping employees satisfied or enabling them to perform their contracts; and that limit is passed when the agreement is not reasonably necessary to effectuate the purposes of the business, or is not usual or customary under similar circumstances. In this respect the case before us differs from those just discussed. Deegan may have considered it reasonably necessary to agree to advance such an amount of money for the purpose named, though he vigorously denies that such condition entered into the contract of employment, in order to secure and retain the services of a competent and willing employee, but it cannot be said as a matter of law that a promise made under such circumstances for such an amount is usual or customary in the coal mining business. At least no proof offered upon the trial shows it to be of that nature. Possibly a different conclusion might have been reached had it appeared that similar agreements had been made in the past and sanctioned by the company. But in the absence of proof showing such advances to be customary or usual, we cannot regard them as such. Besides, the president promptly disavowed an intention to permit compliance with the condition and refused to recognize it as a binding engagement of the company when brought to his attention.

A recent Minnesota case, however, (*M. Burg & Sons* v. *Twin City etc. Drive Co.,* 140 Minn. 101) holds, without the citation of any authority, that the general manager of a corporation has implied authority to bind the company by a contract guaranteeing payment by an employee for furniture to be purchased by him, where it appears that the employee is a valuable man and but for the agreement probably would have quit defendant's employment. It is not necessary to discuss this case further than to refer to our decision in *Haupt* v. *Vint,* 68 W. Va. 657, holding that a manager of a corporation has no implied authority to sign its name as accommodation indorser, surety or guarantor. We express no opinion as to the implied authority of a manager or superintendent of a corporation to bind it, under the conditions presented in

the Minnesota case just cited, by a direct or original promise such as was given in *Channell Brothers* v. *Pulp & Paper Co.,* 77 W. Va. 494, discussed above.

For these reasons we are of opinion that the superintendent of defendant company had no implied authority to bind it to furnish money to the amount claimed, even if there was such a promise by Deegan or Pyle, since we cannot assume, and it is not shown, that agreements of that nature are usual or customary under similar circumstances.    Therefore, our order will reverse the judgment and remand the case for new trial.

*Reversed and remanded.*