Athene COOPER, Appellant,

v.

Jacquelyn Mae SAUNDERS–HUNT, Appellee.

No. 10253.

District of Columbia Court of Appeals.

Submitted June 8, 1976.

Decided Oct. 27, 1976.

Willis C. Payton, Washington, D.C., for appellant.

No appearance was entered for appellee.

Before FICKLING, KERN and GALLAGHER, Associate Judges.

KERN, Associate Judge:

The trial court sitting without a jury heard testimony and rendered a judgment in favor of appellee upon her complaint seeking an accounting from appellant of the proceeds accruing under their partnership.

Beginning at some unspecified date around 1965, appellant Athene Cooper and appellee Jacquelyn Hunt (then Saunders) orally agreed to undertake together and thereafter did undertake two business ventures; one such venture was the purchase, renovation and operation of several rooming houses, a restaurant, and a grocery store; the other was a numbers operation. When Mrs. Saunders became Mrs. Hunt, her husband urged her to terminate these ventures with the appellant, which she did in 1972. She had filed a suit for partition of two properties in 1971 and obtained a

default judgment in the federal district court. She commenced the instant suit in 1974.

The court, specifically stating it disbelieved appellant's testimony, found that appellee had advanced certain sums of money for the partnership's use in purchasing and renovating the properties for which she had received no repayment and that those properties had produced income. The court concluded she was entitled to the amount she had contributed to the partnership—$12,250.[1] Since there is ample evidence to support the findings of fact and the conclusions flow from the findings and reflect no error of law, we are required to affirm. D.C.Code 1973, § 17–305(a); Super.Ct.Civ.R. 52(a).

We note at the outset that conflicting testimony was presented at trial concerning how much profits the properties produced and what portion of such profits each partner received. Appellee contended she received little or none, and appellant answered she received her share.[2] There was testimonial dispute also as to who paid the operating expenses and who managed the properties, about which conflicting contentions the court made no specific findings of fact. We deem, as the trial court apparently did, that the evidence only established the amounts paid into the partnership and not what profits and expenses the partnership had. Accordingly, the trial court limited appellee's recovery to this amount.

The court also concluded that the agreement made by appellant and appellee to operate a business consisting of a restaurant, grocery and several rooming houses did as a matter of law constitute a partnership and that this partnership dissolved at the volition of appellee when she left the businesses to appellant in 1972 at the insistence of her husband.

Appellant raises several contentions urging reversal. He first argues that the evidence does not establish a partnership between the parties but at most a joint tenancy of the realty, and claims that no agreements to operate any businesses were ever made. However, the evidence shows otherwise and supports the trial court's finding. While the evidence is that there was no *written* agreement to form a partnership but only an oral agreement, the law does not require that a partnership agreement must be in writing. D.C.Code 1973, § 41–305 defines a partnership as "an association of two or more persons to carry on as coowners a business for profit," and D.C.Code 1973, § 41–306 provides in part that "receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business . . . ." Appellant himself testified that whatever profits were derived had been shared; moreover, he used the term "partner" in his own testimony.[3] It is well-settled that a partnership contract may be oral and may be inferred from the conduct of the parties. *See, e.g., Holst v. Butler,* 379 Pa. 124, 108 A.2d 740 (1954); *Miller v. Salabes,* 225 Md. 53, 169 A.2d 671 (1961).[4]

1. The evidence was that her contribution amounted to $13,250, but her counsel in summation after all the evidence had been adduced requested but $12,250 and appellee has taken no cross-appeal from the trial court's order.

2. Appellant was unable to produce the books and records of the realty venture because he had thrown them all away.

3. The two parties not only agreed to pool their funds to purchase or rent real estate and operate such businesses as rooming houses, a grocery, and a restaurant, but they shared the profits and expenses of the businesses and they shared the management responsibilities. They maintained almost daily contact with each other over the period of years and insofar as the real estate was concerned, they acted in every way as two partners would. Since we hold that a partnership did indeed exist, we need not decide whether a joint tenancy also existed.

4. These cases are from jurisdictions which, like the District of Columbia, had adopted the Uniform Partnership Act. *See also* Uniform

*See also,* 59 Am.Jur.2d *Partnership* § 34 (1971) and authorities cited therein. An oral partnership agreement such as the one asserted here would not run afoul of the Statute of Frauds, since no term of years was ever fixed by the agreement and therefore it was capable of performance within one year. *Snyder v. Hillegeist,* 100 U.S.App.D.C. 368, 370, 246 F.2d 649, 651 (1957); neither did the asserted agreement by its terms convey any interest in land so as to place it within the Statute of Frauds. *Libby v. L. J. Corp.,* 101 U.S.App.D.C. 87, 247 F.2d 78 (1957). *See also,* J. Crane & A. Bromberg, The Law of Partnership, § 23 (1968). While we certainly do not view the arrangement between the parties as a textbook example of how to form a partnership, we cannot say the trial court erred in concluding that appellee met her burden of proof that a partnership had been created.

■ Appellant next contends that since (a) the two parties also operated together an illegal numbers business during the time they carried on their other ventures and (b) the income from all facets of their partnership was commingled, the court should not enforce the partnership agreement at all in view of the illegal aspect of the partnership. The trial court appeared to consider upon the evidence that the illegal business was a wholly separate venture from the lawful businesses. The record discloses no evidence that the ventures involving the various parcels of realty were undertaken for anything but legitimate purposes, no evidence that the real estate ventures advanced the numbers games, and no evidence that the assets pooled to create the real estate businesses were tainted by any illegality. The numbers business was apparently operated out of a separate building. The only interaction between the two ventures was the commingling of the gross

proceeds. However, the trial court made findings of fact, which are supported by the evidence, that during the life of the partnership each of the real estate ventures netted a profit, thus removing any possibility that the illegal numbers activity sustained or underwrote the legal activities involving the real estate. Since appellee did not ask at trial for an accounting of proceeds and profits, but only that the precise sum of money she had invested in the partnership be returned to her, we think the trial court properly enforced their agreement so far as the real estate ventures were concerned. *See* Uniform Partnership Act (U.L.A.) § 6(1) (1969); J. Crane & A. Bromberg, The Law of Partnership § 21 (1968).

■ Appellant's next contention is that appellee, as plaintiff at trial, vouched for his credibility by calling him as a witness during the trial and could not thereafter challenge his testimony. Since the adverse party to a proceeding is by definition a hostile witness and since under Super.Ct. Civ.R. 43(b), a party may call an adverse party and interrogate by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, it cannot now be said that appellee *certified* the appellant's testimony as credible. In any event, appellant's testimony was deemed not believable by the trial court.

■ Appellant finally urges that the proceedings were "tilted in every way" in favor of appellee since the trial judge acknowledged in a conference at the bench *before* trial that he was a personal acquaintance of appellee's counsel.[5] We disagree. The trial judge was equally insistent that each counsel fully represent his client's interests in a manner appropriate to his professional duty and the record re-

---

Partnership Act (U.L.A.) § 7 (1969) and cases collected therein under notes 24, 25. The Act is contained in D.C.Code 1973, § 41-301 *et seq.* and includes the two sections quoted above.

5. Appellant's counsel at that time stated on the record that he had no objection to proceeding to trial before the judge.

flects that both counsel needed assistance from the court in bringing out the facts and legal arguments of the case. In short, the court interrupted both counsel frequently but with justification and we reject appellant's claim that he in particular was prejudiced.

The judgment must be

*Affirmed.*[6]

6. Although not raised on appeal, we note that virtually no evidence was introduced at trial concerning any liabilities of the partnership existing at the time of its dissolution, and these liabilities must be included in computation at dissolution. D.C.Code 1973, §§ 41–333, 337, 339. Since appellant, from the time of the complaint, had ample notice that the proceeding was an accounting regarding a partnership's dissolution, we assume without deciding that the doctrine of res judicata would prevent him from relitigation as to the liabilities since he had every opportunity to explore this issue at trial.