Albert Z. HODGE

v.

**EVANS FINANCIAL
CORPORATION, Appellant.**

No. 84–5224.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 11, 1985.

Decided on Rehearing July 2, 1987.

Lee A. Rau, with whom Daniel A. Maser and Loren Kieve, Washington, D.C., were on the brief, for appellant.

Albert Z. Hodge, pro se, with whom Gary Ethan Klein, Washington, D.C., was on the brief, for appellee.

Before WALD, Chief Judge, ROBINSON, Circuit Judge, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Chief Judge WALD.

Opinion dissenting in part and concurring in part filed by Senior Circuit Judge MacKINNON.

WALD, Chief Judge:

After a jury verdict awarding appellee Albert Z. Hodge $175,000 for breach of an employment contract, appellant Evans Financial Corporation ("Evans") seeks review of the District Court's denial of its motions for judgment n.o.v. and a new trial. Hodge claimed that he had been discharged from his position as general counsel of Evans in violation of an oral agreement by Evans to employ him permanently. The District Court denied Evans' motion for a directed verdict and refused to instruct the jury on the statute of frauds defense asserted by Evans. Following the jury's verdict, Evans' motions for judgment n.o.v. and new trial were also denied. In this appeal, Evans again argues that the oral employment contract is unenforceable under the District

of Columbia statute of frauds and makes several other objections to the jury's verdict. Although we reject most of these challenges, we agree with Evans that the trial court erred in allowing Hodge to present to the jury evidence concerning two items of damages to which he was not entitled. We therefore affirm the judgment of the District Court on condition that the appellee remit the portion of the award which might be attributable to those items.[1]

## I. BACKGROUND

On two occasions in 1980, Hodge met with Jon Tilley, president and chief operating officer of Evans Financial Corporation, to discuss Hodge's possible employment by Evans. Hodge was at that time assistant counsel and assistant secretary of Mellon National Corporation and Mellon Bank of Pittsburgh. According to Hodge's trial testimony, Tilley asked Hodge at the second meeting what his conditions were for accepting employment with Evans. Hodge replied, "No. 1, the job must be permanent. Because of my age, I have a great fear about going back into the marketplace again. I want to be here until I retire." Trial Transcript ("Tr.") at 109. Hodge testified that Tilley's response was "I accept that condition." Tr. at 110. Hodge subsequently accepted an offer of employment as vice president and general counsel of Evans. He moved from Pittsburgh to Washington, D.C. in September, 1980, and worked for Evans from that time until he was fired by Tilley on May 7, 1981.

Hodge then brought this diversity action in the District Court, alleging that his termination violated Evans' promise of permanent employment. The District Court initially granted summary judgment for Evans, ruling that all employment contracts for an indefinite period of time are terminable at will as a matter of law. *Hodge v. Evans Financial Corp.*, No. 81–2726, slip op. at 6–7 (D.D.C. Apr. 15, 1982). This court reversed and held that "[t]hough the classic assumption of the law is that the

parties intend a contract of indefinite term to be terminable at will, basic principles of contract law inform us that the parties can contract otherwise." *Hodge v. Evans Financial Corp.*, 707 F.2d 1566, 1568 (D.C. Cir.1983). The court concluded that Hodge was entitled to an opportunity to demonstrate that the employment contract between Evans and Hodge was intended to be of indefinite duration and terminable only for cause and remanded to the District Court. *Id.* at 1570. The case was then tried to a jury, which found for the plaintiff and awarded him $175,000 in damages.

## II. ANALYSIS

A. Enforceability of the Agreement Under the District of Columbia Statute of Frauds

Evans argues that the oral employment agreement between Evans and Hodge is unenforceable under the statute of frauds as enacted in the District of Columbia, which provides, in relevant part, that:

> An action may not be brought ... upon an agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing ... and signed by the party to be charged therewith or a person authorized by him.

D.C.Code § 28–3502. Because the agreement here contemplated long-term employment for a number of years, Evans argues that the statute requires it to have been in writing in order to be enforceable.

■ Despite its sweeping terms, the one-year provision of the statute has long been construed narrowly and literally. Under the prevailing interpretation, the enforceability of a contract under the statute does not depend on the actual course of subsequent events or on the expectations of the parties. Instead, the statute applies only to those contracts whose performance could not possibly or conceivably be completed within one year. The statute of frauds is thus inapplicable if, at the time

1. This opinion is being issued upon rehearing of this case. The original opinion, which was published at 778 F.2d 794 (D.C.Cir.1985), has been vacated.

the contract is formed, any contingent event could complete the terms of the contract within one year. *See, e.g.,* Restatement (Second) of Contracts § 130 comment a (1979); 2 Corbin on Contracts § 445, at 542–43 (1950 & Supp. 1984) ("It makes no difference how improbable it is that the condition will occur within a year; if there is any possibility that it may so happen, the statutory provision is not applicable."); 3 Williston on Contracts § 495, at 577–83 (3d ed. 1960) (same).

This interpretation of the statute has been adopted by the District of Columbia courts. The District of Columbia Court of Appeals recently stated that if a contract is "by its terms capable, possible, or susceptible of performance within one year, the statute of frauds does not apply and an oral agreement may suffice." *Launay v. Launay, Inc.,* 497 A.2d 443, 449 n. 4 (D.C. 1985) (citing *Snyder v. Hillegeist,* 246 F.2d 649, 651 (D.C.Cir.1957)); *see also Coan v. Orsinger,* 265 F.2d 575, 578 (D.C.Cir.1959) ("If the contingency which fulfills and completes the terms of the contract happens or could possibly happen within a year, the contract is not within the statute.").

Hodge argues that, under this interpretation of the statute of frauds, a permanent or lifetime employment contract does not fall within the statute because it is capable of full performance within one year if the employee were to die within the period. Hodge's view of the statute's applicability to lifetime or permanent employment contracts has, in fact, been accepted by an overwhelming majority of courts and commentators. *See* Restatement (Second) of Contracts § 130 illustration 2 (1979) ("A orally promises to work for B, and B promises to employ A during A's life at a stated salary. The promises are not within the one-year provision of the Statute, since A's life may terminate within a year."); Restatement (First) of Contracts § 198 illustration 2 (1930) (same); Restatement (Second) of Agency § 414 comment a (1958) (same); 2 Corbin on Contracts § 446, at 549 & n. 35 (1950 and Supp.1984) ("A contract for 'permanent' employment is not within the one-year clause for the reason that such a contract will be fully performed, according to its terms, upon the death of the employee."); E. Farnsworth, Contracts § 6.4, at 394 (1982) (same); 3 Williston on Contracts § 495, at 579–81 & n. 8 (3d ed. 1960) (same); 72 Am.Jur.2d *Statute of Frauds* § 42 (1974 & Supp.1984) ("It is a well-settled general rule that a contract . . . to employ one for the duration of his life [or] a contract to give one 'permanent' employment . . . is not within [the statute] for the reason that contracts of this description are deemed possible of performance within one year from their formation, since, for example, the employee may die within that period.") (footnotes omitted).

■ Although the local courts have not directly spoken on the applicability of the statute to permanent employment contracts, the vast majority of the state courts faced with this issue have squarely and unequivocally held that contracts such as Hodge's fall outside the statute.[2] As a diversity court, we must make a conscientious attempt to predict whether local

---

**2.** *See, e.g., Kitsos v. Mobile Gas Serv. Corp.,* 404 So.2d 40 (Ala.1981) (permanent or lifetime employment); *Buechner v. Rouse,* 538 P.2d 117 (Colo.App.1975); *Spindel v. National Homes Corp.,* 110 Ga.App. 12, 137 S.E.2d 724 (1964) (indefinite employment); *Martin v. Federal Life Ins. Co.,* 109 Ill.App.3d 596, 65 Ill.Dec. 143, 440 N.E.2d 998 (1982) (permanent employment); *Kiyose v. Trustees of Indiana Univ.,* 166 Ind.App. 34, 333 N.E.2d 886 (1975) (permanent or lifetime employment); *Stauter v. Walnut Grove Prods.,* 188 N.W.2d 305 (Iowa 1971) (indefinite, permanent or lifetime employment); *Pierson v. Kingman Milling Co.,* 91 Kan. 775, 139 P. 394 (1914) (lifetime employment); *Carnig v. Carr,* 167 Mass. 544, 46 N.E. 117 (1897) (permanent employment); *Rowe v. Noren Pattern & Found-* ry Co., 91 Mich.App. 254, 283 N.W.2d 713 (1979) (permanent employment); *Bussard v. College of St. Thomas, Inc.,* 294 Minn. 215, 200 N.W.2d 155 (1972) (permanent employment); *Slabon v. St. Louis Car Co.,* 102 S.W.2d 939 (Mo.App.1937) (lifetime employment); *Weber v. Perry,* 201 S.C. 8, 21 S.E.2d 193 (1942) (permanent or indefinite employment); *Miller v. Riata Cadillac Co.,* 517 S.W.2d 773 (Tex.1974) (indefinite employment); *Cooper v. Vitraco, Inc.,* 320 F.Supp. 239 (D.V.I. 1970) (Virgin Islands law) (lifetime employment); *Silverman v. Bernot,* 218 Va. 650, 239 S.E.2d 118 (1977) (lifetime employment); *Rua v. Bowyer Smokeless Coal Co.,* 84 W.Va. 47, 99 S.E. 213 (1919); *Dow v. Shoe Corp. of America,* 276 F.2d 165 (7th Cir.1960) (Wisconsin law) (lifetime employment).

courts would accept the prevailing view of the statute of frauds in light of the relevant indications in local law and elsewhere. *See generally* 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4507 (1982). *In Cooper v. Saunders-Hunt,* 365 A.2d 626, 629 (D.C.1976), the highest local court adhered to the conventional, narrow interpretation of the one-year provision by concluding that an indefinite oral partnership agreement does not fall within the statute. *See id.* ("An oral partnership agreement [for an indefinite period of time] would not run afoul of the Statute of Frauds, since no term of years was ever fixed by the agreement and therefore it was capable of performance within one year.") (citing *Snyder,* 246 F.2d at 651). This court has also recognized, albeit in dicta, that employment contracts of an uncertain or permanent duration are excluded from the statute. *See Farrow v. Cahill,* 663 F.2d 201, 207 n. 29 (D.C.Cir. 1980) ("[A] promise to serve as an employee as long as the employee lives ... is ... clearly outside the Statute.") (discussing Williston). In sum, the prevailing view is that Hodge's permanent employment contract is not barred by the statute of frauds, and there is no reason to believe that the District of Columbia courts would depart from the conventional interpretation of the statute in this case.

In arguing that oral long-term employment contracts are unenforceable under the statute, Evans relies on dicta in two federal district court cases. *See Prouty v. National R.R. Passenger Corp.,* 572 F.Supp. 200, 204 (D.D.C.1983); *Gebhard v. GAF Corp.,* 59 F.R.D. 504, 506 (D.D.C. 1973). Neither of those cases, however, mentioned the conventional view that permanent employment contracts are outside the statute, and neither attempted to predict how local courts would treat such a

contract in light of *Snyder* (now reaffirmed in *Launay* ) and *Cooper.* These district court cases therefore provide no reliable authority or even suggestion that District of Columbia courts would not follow the conventional interpretation of the statute of frauds.

Further, in both *Prouty* and *Gebhard,* plaintiffs alleged that the oral employment contracts at issue guaranteed them employment for a specified period of time—until they reached the age of sixty-five. *See* 572 F.Supp. at 204; 59 F.R.D. at 506. In neither case did the alleged contract provide for indefinite, lifetime or permanent employment. Under the conventional view of the statute, an oral employment contract for a stated, definite term of years exceeding one year (like those alleged in *Prouty* and *Gebhard* ) is unenforceable on the rationale that the employee's possible death within one year would "defeat" rather than "complete" the express terms of the contract.[3]

The employment contract in this case cannot reasonably be interpreted as a contract for a specified period of time, however. Hodge unequivocally alleged a contract for permanent employment, not a contract until he reached age sixty-five or for any other stated period of time. *See* Complaint ¶ 6, Record Excerpts at 13; *Hodge,* 707 F.2d at 1567 ("The complaint ... stated that ... Tilley promised Hodge that his employment would be permanent."). Evans has not at any point in this lawsuit argued that Hodge and Tilley entered into a contract for any definite period of time. To the contrary, Evans has consistently argued that Hodge must be deemed to be an at-will employee precisely because he was *not* promised employment for "any fixed period of time." Brief of Appellant at 11; *see also id.* at 13, 15–16; *Hodge,* 707

---

**3.** In *Easter v. Kass-Berger, Inc.,* 121 A.2d 868, 870 (D.C.Mun.App.1956), for example, a local trial court held that an employment contract for an express term of two years fell within the statute. This holding is entirely consistent with the conventional interpretation accepted by local courts. *See Cooper,* 365 A.2d at 629 (holding that contracts for an *indefinite* period are excluded from the statute's coverage); *see also*

*Farrow,* 663 F.2d at 207 n. 29 (noting this distinction in the conventional view); *cf. Coan v. Orsinger,* 265 F.2d 575, 576–77 (D.C.Cir.1959) (concluding that contingencies that defeat a contract rather than complete its performance are within the statute). *See generally* Restatement (Second) of Contracts § 130, comment b (1979); 2 Corbin on Contracts § 447 (1950 & Supp.1984).

F.2d at 1566–67 & n. 3.[4] In various pretrial memoranda, moreover, the parties definitely stipulated that Hodge and Tilley had not entered into a contract for any fixed period of time. *See* Pretrial Brief of Defendant, Record Item 54, at 32–33; Reply of Plaintiff to Defendant's Pretrial Brief, Record Item 55, at 3.

The fact that Hodge expected to retire at some point does not mean that his contract could not possibly be performed within one year. All employment contracts of permanent, lifetime or indefinite duration undoubtedly contemplate retirement; such contracts certainly do not, as a matter of law, mean that employees are bound to work until the moment they drop dead. Hodge's permanent employment contract with Evans could therefore be fully performed, according to its terms, upon Hodge's retirement or upon his death. Under the conventional view of the statute, the latter possibility is sufficient to take the contract out of the statute. *See, e.g.*, 2 Corbin on Contracts § 454 (contracts susceptible of alternative performances are outside the statute if any one of the alternatives could possibly be performed within one year); 3 Williston on Contracts § 498 (same). That Hodge expected to retire before he died is completely irrelevant to this case so long as the contract was legally susceptible of performance within one year. The applicability of the statute of frauds does not depend on the expectations of the parties.

There is no indication in local law or elsewhere that a permanent employment contract should be construed as a contract for an expressly stated, fixed term of years by virtue of an employee's expectation that he or she will retire at some point.[5] No court or commentator has ever suggested that the possibility of the employee's death within one year would "defeat" rather than "complete" such a contract. To the contrary, courts and commentators have consistently accepted the view that indefinite permanent employment contracts such as Hodge's fall outside the statute because they are capable of full performance within one year. *See, e.g.*, 2 Corbin on Contracts § 446, at 549–50 (Permanent employment contracts fall outside the statute because "[t]he word 'permanent' has, in this connection, no more extended meaning than 'for life.'"); 3 Williston on Contracts § 495, at 582 ("A promise of permanent personal performance is on a fair interpretation a promise of performance for life, and therefore not within the Statute.").

Evans asserts finally that a letter from Tilley to Hodge confirming salary and benefit matters brings Hodge's contract within the statute because it established a fixed date in the future, more than a year from the making of the contract, for the payment of Hodge's first bonus. That letter, which was dated July 31, 1980, states in relevant part:

> I am pleased to welcome you to Evans. I thought it would be useful to confirm in writing a number of items.
>
> Your position will be Vice President and General Counsel of Evans Financial Corp. This position is a Grade 63 and initial salary will be at the annual rate of $47,500. In addition, a minimum bonus of $6000 is guaranteed for 1981 (payable January, 1982). In the event actual bonus exceeds this amount, you will receive

---

4. At trial, Evans' counsel elicited the following testimony from Hodge:

 Question: Mr. Hodge, am I correct that you received no promise from anyone at Evans of employment for any specific period of time?

 Answer: Not a specific date to date or number of years, no.

 Question: As a matter of fact, not any specific period of time; not one day, not 10 days, not 20 days, not 60 days, not 90 days, not 10 years, no specific period of time at all?

 Answer: No.

 Tr. at 203–04.

5. Hodge testified, when asked if he had "formed an intention as to how long [he] planned to work," that "I really questioned if I was going to go much beyond 65." Tr. at 115. The dissent concludes on the basis of this testimony that Hodge's contract was one for a definite period of 11 years, although Hodge "could work a little beyond that age." *See* diss. op. at 572. It seems clear, however, that Hodge was merely stating his expectation as to how long he intended to continue working, and there is no evidence that Hodge and Tilley agreed that Hodge would be permitted to work for eleven years or for any other definite period of time.

the higher amount. I have enclosed a summary of our current bonus plan with this letter....

Letter from Jon Tilley to Albert Hodge 1 (July 31, 1980), Record Excerpts at 161. Because Hodge's, first bonus was payable in January of 1982, Evans argues, the contract "contemplated employment extending to and beyond" that date and therefore could not be performed within one year. *See* Brief of Appellant at 38.

Tilley's letter constitutes nothing more, however, than a routine confirmation of a particular contract term—Hodge's salary scale—that is irrelevant to whether Hodge was promised permanent employment. It does not address the duration of Hodge's employment, and it certainly does not purport to establish an employment contract for any fixed period of time. Courts have specifically and consistently held that the presence of bonus or salary terms payable after one year does not bring a long-term indefinite employment contract within the statute. *See, e.g., White Lightning Co. v. Wolfson,* 68 Cal.2d 336, 438 P.2d 345, 66 Cal.Rptr. 697 (1968) (Tobriner, J.): *Murphy v. Buschman-Jennings, Inc.,* 382 S.W.2d 29 (Mo.App.1964); *Miller v. Riata Cadillac Co.,* 517 S.W.2d 773 (Tex.1974). At most, Tilley's letter indicates only that Evans expected Hodge to work through January of 1982—an expectation that does not bring a permanent employment contract within the statute.

Hodge alleged and proved that Evans promised him indefinite permanent employment. Under settled legal principles, such contracts are not barred by the statute of frauds. We recognize that the conventional view of the statute is somewhat "legalistic." Yet the statute of frauds itself is widely understood as a formal legal device that shields promise breakers from the consequences of otherwise enforceable agreements. *See, e.g., Farrow,* 663 F.2d at 207 n. 29; *Hackney v. Morelite Construction,* 418 A.2d 1062, 1065–67 (D.C.1980); 2 Corbin on Contracts § 444 (1950 & Supp.1984). The conventional, narrowing interpretation overwhelmingly adopted by courts and commentators is designed to mollify the often harsh and unintended consequences

of the statute. *See* Restatement (Second) of Contracts § 130 comment a (1979). Here the jury concluded, despite Evans' vigorous defense, that Hodge was promised permanent employment and that he was nonetheless fired without cause. Under the traditional, narrow view of the statute generally endorsed by *Launay* and *Cooper* and explicitly adopted by the vast majority of courts and commentators, the statute of frauds does not bar the enforcement of such jury verdicts.

### B. Sufficiency of the Evidence

■ Evans argues that there was not sufficient evidence from which a reasonable jury could conclude that the parties agreed to a permanent employment contract which was terminable only for cause, and that therefore the District Court erred in denying Evans' motion for judgment n.o.v. A motion for judgment n.o.v. should be granted only if "the evidence, together with all inferences that can reasonably be drawn therefrom is so onesided" that reasonable persons could not disagree as to the verdict. *Vander Zee v. Karabatsos,* 589 F.2d 723, 726 (D.C.Cir.1978), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1066 (1979).

In its earlier opinion in this action, this court held that Hodge could prove that he was promised permanent employment terminable only for cause by presenting evidence of "the express terms of the contract, ... surrounding circumstances, or the existence of additional consideration— for example, plaintiff's willingness to leave a secure position in a different city in order to begin employment with defendant." *Hodge,* 707 F.2d at 1569. At trial, Hodge presented evidence both that Tilley expressly promised him permanent employment until retirement and that he, Hodge, gave "additional consideration" in exchange for that promise. *See* Tr. at 109–10 (Hodge told Tilley that "the job must be permanent.... I want to be here until I retire"; Tilley unequivocally accepted that condition); *id.* at 122 (security of permanent employment with Evans induced Hodge to leave his previous job and to

move his family to Washington). Under the legal standard set out in *Hodge*, this evidence is sufficient to defeat a motion for judgment n.o.v. on the issue of whether the parties entered into a permanent employment contract.

Evans relies on three types of allegedly conflicting evidence to argue that Hodge's employment was not intended to be permanent. First, Evans points to elements of Hodge's testimony that might conceivably undermine its credibility. *See, e.g.,* Tr. at 212–13 (Hodge contrasted his understanding of "permanent" employment with employment "for a term of 30 days or 60 days or 90 days or something of that sort"); *id.* at 254 (Hodge failed to ask Tilley for a written agreement that he could only be discharged for cause; such an agreement "didn't have any bearing on anything we had ever discussed"). But it is clear from the jury's verdict that it accepted as true Hodge's testimony concerning the agreement he reached with Tilley. Our review of the District Court's denial of the motion for judgment n.o.v. is limited by the principle that "[t]he weighing of conflicting evidence and the evaluation of witness credibility is exclusively within the jury's province." *Carter v. Duncan-Huggins, Ltd.,* 727 F.2d 1225, 1234 (D.C.Cir. 1984). We cannot disturb the jury's credibility determination simply because of the existence of conflicting evidence which the jury apparently considered and found insufficient to discredit Hodge's account of what occurred.

Second, Evans argues that there was no evidence of "additional consideration" in this case because Hodge had independent reasons for moving his family back to Washington, where he had lived before moving to Pittsburgh. Hodge did concede on cross-examination that a desire to return to Washington, where he had friends and family, was "a factor" in his decision to accept employment with Evans, but he also noted that he "had friends and family in Pittsburgh." Tr. at 221. This evidence again created a credibility question for the jury, which the jury apparently resolved by concluding that Hodge was motivated to return to Washington in large part by Evans' promise of permanent employment.

Finally, Evans contends that Tilley's July 31, 1980, letter to Hodge set out all relevant "terms and conditions of employment," *see* Brief of Appellant at 16, and that its failure to state that Hodge's employment was to be permanent or that he could only be terminated for cause contradicts Hodge's testimony concerning the oral promise of permanent employment. Tilley stated in the letter, however, that he "thought it would be useful to confirm in writing a number of items," and there was no indication that the letter was intended to summarize all of the terms of the parties' agreement with respect to Hodge's employment. *See* Letter from Jon Tilley to Albert Hodge 1 (July 31, 1980), Record Excerpts at 161. The letter's focus on salary and benefits was consistent with Hodge's testimony that he and Tilley decided not to negotiate about salary during the meeting at which Tilley accepted Hodge's condition that his employment must be permanent, but that Hodge's salary was negotiated at a later time through an intermediary. *See* Tr. at 111, 115–16. Tilley's letter could reasonably be interpreted as a confirmation of those matters that Tilley and Hodge had not agreed to during their meetings. We conclude that there was sufficient evidence from which the jury could reasonably determine that Evans and Hodge agreed to enter into a permanent employment contract, and that the jury could and apparently did choose to reject the pieces of conflicting evidence that were in the record.

## C. Jury Instructions

Evans contends that the trial court made four prejudicial errors in its instructions to the jury. First, Evans argues, the court erred in instructing the jury on the application of the presumption that parties who contract for a "permanent" employment relationship intend to create merely an ordinary employment contract, terminable at the will of either party. *See* Brief of Appellant at 19–20. The District Court instructed the jury as follows:

Ordinarily when an employer and an employee speak in terms of a permanent

employment relationship, the assumption is that they have in mind merely the ordinary business contract for a continuing employment, terminable at the will of either party.

You may apply this assumption if you find no evidence of the intent of Hodge and Evans to structure their employment relationship differently. In order to ascertain the parties' intentions, you should look at such factors as the express terms of the contract as set forth by the parties, both orally and in writing, evidence of the surrounding circumstances at the time of contracting and whether there was additional consideration given, given up by Hodge other than merely agreeing to perform his job at Evans.

Tr. at 664. This instruction follows very closely the discussion of the presumption in this court's opinion in *Hodge,* 707 F.2d at 1568–69. To a large extent, therefore, the validity of the District Court's instruction is established by the doctrine of the law of the case:

When a case is appealed and remanded, the decision of the appellate court establishes the law of the case and it *must* be followed by the trial court on remand. If there is an appeal from the judgment entered after remand, the decision on the first appeal establishes the law of the case to be followed on the second.

1B *Moore's Federal Practice* ¶ 0.404[1], at 119 (1984) (emphasis in original); *see also Maggard v. O'Connell,* 703 F.2d 1284, 1289 (D.C.Cir.1983) (trial court is without power to reconsider issues decided on a previous appeal).

 Evans argues that because the District Court instructed the jury that "[y]ou may apply this assumption if you find no evidence of the intent of Hodge and Evans to structure their employment relationship differently," the jury "may well have believed that if there was any evidence of such an intent, no matter how slight, it was required to find in favor of Mr. Hodge." Brief of Appellant at 20. The court specifically instructed the jury, however, that Hodge had the burden of establishing the existence of a contract for permanent em-

ployment by a preponderance of the evidence. *See* Tr. at 659–60 (explaining preponderance of the evidence standard); Tr. at 663 (instructing jury that for plaintiff to carry burden of proof imposed upon him, jury must find that plaintiff and defendant "entered into a binding oral contract [and] that the terms of that agreement were clear, definite and certain, not vague, indefinite or uncertain"). Taken as a whole, the instructions correctly stated the law with respect to the interpretation of the term "permanent employment."

Evans also asserts that the trial court erred in instructing the jury on the issue of "additional consideration." The court instructed the jury that it could find that "additional consideration was furnished by Hodge in giving up his job in Pittsburgh and moving his family to Washington, D.C." Tr. at 664. The court also told the jury that if Hodge established that his employment contract was intended to be permanent and that he had provided such additional consideration, then he could only be terminated for good cause. *Id.* Evans argues that, as a matter of law, relocation of an employee's family or relinquishment of his previous at-will employment does not constitute "additional consideration." *See* Brief of Appellant at 21–24. This argument is clearly foreclosed by the law of the case as set out in *Hodge,* in which this Court stated that

Hodge contends that he gave up a good job in a different city, relocated his family to a new city, and accepted employment at a lesser rate of compensation, all in reliance on Evans' promise that his employment would be permanent. If these assertions are accepted, as they must be at this stage of the litigation, the result is a contract for employment which ... is not terminable at will even though it does not expire on some certain date in the future.

707 F.2d at 1569. The court also specifically mentioned as an example of "additional consideration" the "plaintiff's willingness to leave a secure position in a different city in order to begin employment with defendant." *Id.* The law of the case doctrine is designed to prevent relitigation of an issue

which, like this one, has already been decided in a previous appeal of the same case. *See United States v. Singleton*, 759 F.2d 176, 178 (D.C.Cir.1985).

Evans argues that the trial court erred in refusing to instruct the jury that Hodge had the burden of demonstrating that Tilley possessed the authority to bind the corporation to a permanent employment contract terminable only for cause. *See* Tr. at 664. At trial, Evans presented testimony of a corporate official that nothing in Evans' corporate bylaws specifically authorized Tilley to offer a permanent employment contract to an employee. *See* Tr. at 567–68. Evans did not submit the bylaws themselves, however.

The District Court's refusal to give the requested instruction appears to have been correct under the law of the District of Columbia. *See Newbold v. Brennan Construction Co.*, 48 App.D.C. 90 (D.C.), *cert. denied*, 248 U.S. 579, 39 S.Ct. 21, 63 L.Ed. 430 (1918), *cited with approval in International Tours & Travel, Inc. v. Khalil*, 491 A.2d 1149, 1154 (D.C.1985). In *Newbold*, the plaintiff sought to recover damages for breach of a ten-year employment contract executed by the president of the defendant corporation. The court held that "it was incumbent upon the corporation to show that [the president] did not possess the power which he assumed to exercise in executing the present contract." *Id.* at 95. The *Newbold* court noted that the president of the corporation "looked after and controlled individually to a large extent the affairs of the corporation," that the long-term employment contract "was not of that extraordinary nature which amounts to the conveying away of an important interest in the corporate property," and that, as in this case, the defendant did not introduce the corporate bylaws to show lack of authority to enter into the contract. *Id.* at 94.

■ Tilley was the president and chief operating officer of Evans Financial Corporation. He made virtually all of the company's business decisions, including decisions about the hiring and firing of employees. *See* Tr. at 102–03, 133. Given the evidence of Tilley's dominant role in managing the corporation and the nature of the contract offered to Hodge, which basically amounts to an offer to employ a fifty-four-year-old man until retirement, there was no basis for requiring Hodge to prove that Tilley was expressly authorized to enter into the contract on behalf of Evans.

■ Finally, Evans contends that the trial court's instruction to the jury on the issue of whether Hodge was discharged for good cause was erroneous, in that it permitted the jury to determine whether the discharge was objectively reasonable, rather than limiting the jury to determining whether Evans acted in good faith. *See* Brief of Appellant at 26–30. In instructing the jury on the meaning of "good cause," the District Court stated that

> [y]ou may find Hodge was discharged for good cause if you find this discharge was neither arbitrary and capricious, nor unjustified.
>
> The firing of an employee would be arbitrary and capricious if it was done for no reason at all or for a cause not reasonably related to the employee's performance of his duties for the employer. The firing of an employee would be unjustified if the asserted defects in the employee's job performance did not exist or were so insubstantial or minor in character that they would not justify the employer's action in discharging the employee.

Tr. at 665. This instruction was in accordance with the standard set out in *Brock v. Mutual Reports, Inc.*, 397 A.2d 149 (D.C. 1979), in which the plaintiff was, like Hodge, a managerial employee alleging breach of an employment contract. The court stated in that case that an employer could justifiably dismiss "an employee who is inefficient and cannot competently perform the job for which he or she was hired," but that "[s]light or occasional omissions do not constitute incompetent conduct justifying dismissal; thus, the proper test for determining whether an employer can be held liable for terminating an employee's contract is whether the conduct is so inconsistent with the employer-employee relationship that it prejudices a valid

business interest of the employer." *Id.* at 153. This standard requires the jury to evaluate objectively the job performance of the employee, and is basically equivalent to that set out in the District Court's instruction.

D. The Determination of Damages

Evans argues that the jury was improperly permitted to speculate as to damages and to consider certain specific items of damages that should have been excluded. The District of Columbia Court of Appeals has set out the standard for determining damages in an action of this kind:

> The measure of damages in an employee's action against his employer for breach of the employment contract is generally the compensation "that would have been due to the employee during the unexpired period of employment with appropriate reduction to present worth."
> ... This prima facie entitlement, though, is subject to the defense of mitigation of damages: "If the employee has obtained a substitute job, or could obtain one by reasonable effort, he is chargeable with the income he obtains or reasonably could obtain in this fashion, but only if the employer sustains the burden of proving these facts."

*District of Columbia v. Jones*, 442 A.2d 512, 524 (D.C.1982) (quoting D. Dobbs, *Law of Remedies* § 12.25, at 924–25 (1973)) (citations omitted). In this case, the application of this standard was complicated by the fact that each of the parties argued for a different method of calculating what Hodge would have received had the employment contract not been breached. Hodge testified at trial that Tilley had promised him that his income at Evans would be "equal to and greater than what I was receiving at Mellon." Tr. at 110. Accordingly, Hodge calculated damages by estimating what he would have earned had he remained at Mellon and subtracting his actual or estimated income from Evans and from other employment sources. *See* Tr. at 195–203. Hodge set up a private legal practice after his discharge and estimated that the income from this private practice would equal his Evans salary after four

years. For each year, he subtracted his actual or estimated private practice income from the amount he alleged that he would have been paid by Mellon. *See id.* Evans' position was that Hodge was only entitled to the salary he initially received at Evans from the time his severance pay ended until the end of 1983—apparently because Hodge stated in his deposition testimony that he would seek damages only through 1983. *See* Tr. at 603–05.

The District Court instructed the jury on each party's theory with respect to the appropriate measure of damages:

> Now, there are two conflicting contentions as to damages, and I will seek to state each of them. There are two different concepts of damages in this case. Plaintiff's contention is that he is entitled to what he would have earned had he not been terminated, starting with the date November 7, 1981, six months after he was terminated, and when his severance pay ceased. He would project the period you are to consider into the future until his income from his private practice, as he computes it, would equal what he earned from Mellon. He uses the Mellon figure because he says Tilley promised him his income at Evans would be at least equal to the Mellon figure. This is approximately four years. From this, you will subtract whatever he has received, unemployment income, fees, et cetera. To this you would add hospitalization charges approximately $6,911.
> The defendant, on the other hand, contends if you reach the issue of damages, plaintiff is entitled only to what he would have earned from November 7, 1981, until the end of 1983, less unemployment income, fees, et cetera.

Tr. at 668–69. The court also instructed the jury "not to award to plaintiff speculative damages; that is, compensation for present or future detriment which although possible is remote or based on guess work." *Id.* at 669.

■ Evans argues that the District Court's instructions impermissibly allowed the jury to base its calculation of damages on what Hodge would have earned had he

remained at Mellon. It is apparent from the jury's verdict, however, that it accepted Hodge's testimony as to what occurred during his meeting with Tilley, and Hodge testified that at that meeting Tilley promised that Hodge's compensation at Evans would equal what he was earning at Mellon. Under the standard set out in *Jones*, the District Court correctly permitted the jury to determine damages based on what it concluded Hodge had been promised.[6]

Evans also argues that Hodge "based his 'lost income' calculations on speculation and conjecture and thus failed to establish the amount of such damages with certainty." Brief of Appellant at 43. To support this claim, Evans points to the fact that Hodge was allowed to estimate that he would have received a salary increase of eight percent a year if he had remained at Evans, and that his income from the private law practice would increase at the rate of thirty-three percent a year. *See* Tr. at 197–201. The plaintiff in a contract action "is not required to prove the amount of his damages precisely; however the fact of damage and a reasonable estimate must be established." *W.G. Cornell Co. v. Ceramic Coating Co.*, 626 F.2d 990, 993 (D.C.Cir. 1980). Evans has not suggested any reason why Hodge's estimates should be considered unreasonable.

Evans also objects to the trial court's instruction that Hodge could recover medical expenses incurred after he was discharged and the medical insurance policy provided by Evans lapsed. *See* Brief of Appellant at 47–48. These expenses would have been covered by the insurance policy had the contract not been breached, *see* Tr. at 155, 165–67, and they therefore constituted consequential damages which Hodge was entitled to recover. *See Maloney v. E.I. DuPont de Nemours & Co.*, 352 F.2d 936, 940 (D.C.Cir.1965) (plaintiff alleging wrongful breach of an employment contract is entitled to show consequential damages resulting from termination), *cert. de-*

*nied*, 383 U.S. 948, 86 S.Ct. 1211, 16 L.Ed.2d 210 (1966).

Finally, Evans argues that the District Court erred in permitting Hodge to claim as items of damages pension and profit sharing payments he would have received had he remained at Mellon and expenses incurred in connection with the sale and purchase of houses necessitated by his move to Washington. *See* Brief of Appellant at 44–47. Evans correctly asserts that Hodge is not entitled to recover these items because they are not payments he would have received under the employment contract with Evans. Hodge testified that Tilley informed him that Evans did not have a pension plan or a profit sharing plan. Tr. at 111–12. He also testified that no one at Evans promised him that he would be paid for expenses he incurred in selling his house in Pittsburgh and buying a house in Washington. Tr. at 289–90. The District Court did not refer to these items in its instructions to the jury, but it did instruct the jury to "award plaintiff ... such sum as will reasonably and fairly compensate him for the losses he has sustained," Tr. at 669, and there is no indication that the jury did not consider these items in determining the amount of damages to be awarded to Hodge.

Nonetheless, the erroneous admission of evidence concerning improperly claimed items of damages does not require us to reverse and remand for a new trial where, as here, the amount of the jury's verdict that might be traceable to the error can be ascertained. In these circumstances, the error may be corrected by requiring the appellee to remit the portion of the award that can be attributed to the erroneous admission of evidence. *See* 6A *Moore's Federal Practice* ¶ 59.08[7] (1986); *see also Hobson v. Wilson*, 737 F.2d 1, 58 n. 159 (D.C.Cir.1984) (reviewing courts often set amount of remittitur "where the proper amount is beyond dispute"), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d

6. Evans argues that Hodge had agreed to accept an initial salary that was less than what he had been earning at Mellon. *See* Brief of Appellant at 43. This argument ignores the fact that, in the July 31, 1980 letter from Tilley, Hodge was guaranteed a bonus of at least $6000 for his first year. *See* Letter from Jon Tilley to Albert Hodge 1 (July 31, 1980), Record Excerpts at 161.

142 (1985). Hodge claimed as damages the pension and profit sharing payments he would have received had he remained at Mellon, which he estimated at $6,731.75, and he also claimed $10,652 in expenses incurred in selling and purchasing his houses. Tr. at 199. Accordingly, we conclude that Hodge must be required to remit $17,-383.75 of the damages he received.

### E. The Trial Court's Treatment of Hodge as a *Pro Se* Litigant

▮▮▮▮ Evans argues that Hodge was improperly accorded preferential treatment by the District Court because of his status as a *pro se* litigant. *See* Brief of Appellant at 30–34. Evans points to several of the court's rulings as evidence of this alleged preferential treatment. The trial court permitted Hodge, over Evans' objection, to introduce into evidence documents concerning Hodge's efforts to find other employment after his discharge by Evans. *See* Tr. at 160–65. Evans asserts that these documents were first produced "just seven business days prior to trial," and that Evans was "severely prejudiced" by the admission of the documents because it was unable to conduct discovery with respect to them. These documents consisted only of copies of employment advertisements to which Hodge responded and copies of letters he received in response to his inquiries. It is highly unlikely that the fact that Evans had only a week to examine them before trial could have resulted in any prejudice to Evans.[7] Evans also argues that the trial court erred in refusing to allow a statement of stipulated facts to be read to the jury at the close of Evans' case-in-chief. *See* Tr. at 628–29. Evans does not assert, however, that the stipulated facts were not presented to the jury through other evidence, and does not suggest any way in which the District Court's refusal to allow the stipulations to be read

to the jury hampered Evans' ability to put on an effective defense.

### III. CONCLUSION

Evans' only argument which we find to have merit is its objection to the admission of evidence concerning two specific items of damages claimed by Hodge. The oral contract between Evans and Hodge was not rendered unenforceable by the District of Columbia statute of frauds, and Evans' other challenges do not require that the verdict be overturned. Accordingly, we affirm the judgment of the District Court on condition that appellee Hodge remit $17,-383.75 of the jury's award of damages.

*So ordered.*

MacKINNON, Senior Circuit Judge (dissenting in part and concurring in part).

Due to the death of Judge Tamm, who had concurred in the original opinion of the court,[1] Judge Robinson was designated to become the third member of the panel considering Appellee Hodge's petition for rehearing. This has resulted in a reversal of the judgment originally reached by the court, as Judge Robinson now joins Chief Judge Wald in an opinion that generally follows her earlier dissent. My response to this development is to adhere to my original opinion for the court holding that the contract was unenforceable under the Statute of Frauds and to incorporate by reference the court's prior opinion. In addition, the following comments are offered with respect to the current majority opinion.

### I.

First, the majority dismisses Hodge's testimony to the effect that the oral contract he entered into with Evans Financial Corp. was for permanent work until he retired not "much beyond 65." (Tr. 115). Hodge

7. Evans also asserts that it was prejudiced by Hodge's use at trial of a document listing his various items of damages. Examination of the transcript reveals, however, that the attorney who assisted Hodge at trial did not attempt to introduce this document into evidence, but merely used it to refresh Hodge's recollection on the witness stand. *See* Tr. at 192–96. It was,

in fact, Evans' counsel who insisted that the document be marked as an exhibit. *See* Tr. at 195 (defendant's exhibit EEE marked for identification).

1. *Hodge v. Evans Financial Corp.*, 778 F.2d 794 (D.C.Cir.1985).

testified, in response to interrogation by his own counsel, that his *conditions* for entering into a contract of employment with Evans were as follows:

> I said, No. 1, the job must be permanent. Because of my age, I have a great fear about going back into the marketplace again. I want to be here *until I retire.*

Tr. 109 (emphasis added). What he intended by his condition "until I retire" according to his testimony was that the contract must meet his condition to permit him to work not "much beyond 65."

> Q: Had you formed an intention as to how long you planned to continue to work?
>
> ....
>
> THE WITNESS [Hodge]: The Bank had a plan, a pension plan which had recently been expanded from 65 years to 70 years, and I had originally thought in terms of 65, and they would send around notices and printed material. *I really questioned if I was going to go much beyond 65.*

Tr. 115 (emphasis added). Hodge's answer to the question is in the last sentence, and cannot be characterized as merely a statement of intention. The response indicates Hodge's understanding of the contract—that he had a specific right to work not "much beyond 65." The contract, by Hodge's interpretation, was thus *definite* until age 65, but he could work a little beyond that age. Since Hodge was 54 at that time, the contract permitted him to work for 11 years at a minimum. Such a contract is a long-term contract, for more than one year, and thus is unenforceable under the Statute of Frauds.

The majority responds to this testimony[2] by claiming that the statement merely expresses Hodge's "expectation as to how long he intended to continue working" and that "there is no evidence that Hodge and Tilley agreed that Hodge would be permitted to work for eleven years or for any

other definite period of time." Maj. Op. at 564 n. 5. Testimony should not be so narrowly read and given such a restrictive construction. Clearly, Hodge would not have had an "expectation" to work until a distant date in the future unless the contract, that he claimed he had entered into and upon which he relied, permitted him to work until that distant time. He cannot contend in one breath that he had a long-term contract and in the next breath that the contract could be "fully performed" within one year. The majority further tries to avoid the long-term character of the contract by claiming that the contract was not "for a specified period of time." Maj. Op. at 563. Of course, the contract did not run until a *fixed day certain,* but it was, according to Hodge's understanding, "definite" until age 65, and "indefinite" beyond that but not "much beyond." The fact that the contract could run beyond the 11 years that were definite does not destroy the long-term character of the contract. The contract was therefore not capable of performance within a year of its making and thus is unenforceable under the Statute of Frauds.

## II.

Another fatal flaw in the majority opinion is its reliance on cases involving contracts not analogous to the agreement at issue here. In two of the cases the majority cites for support, the court found oral contracts containing "life" terms to be outside the Statute of Frauds, because the relevant party could have died within a year of the contract's formation. *See Farrow v. Cahill,* 663 F.2d 201, 207 n. 29 (D.C.Cir.1980) (promise of *lifetime* employment); *Launay v. Launay, Inc.,* 497 A.2d 443, 449 n. 4 (D.C.1985) (buy-sell agreement triggered upon *death* of stockholder). In the other two cases cited by the majority—holding that oral partnership agreements for an indefinite term were enforceable—the duration of the contracts was not only not fixed, but not even discussed. *See*

---

2. Instead of seriously considering Hodge's testimony on this point, the majority elects to rely upon the allegations in plaintiff's complaint, i.e., "*See,* Complaint ¶ 6, Record excerpts at 13 ..."

Maj. Op. at 563. But cases are decided on the testimony at trial, not on mere allegations in the pleadings.

*Snyder v. Hillegeist,* 246 F.2d 649 (D.C.Cir. 1957) (co-brokerage agreement for commission to be performed upon acquisition of building or building site); *Cooper v. Saunders-Hunt,* 365 A.2d 626 (D.C.1976) (no term of years discussed in oral partnership agreement).

The agreement between Hodge and Tilley is of a very different character than the contracts addressed in the foregoing cases. The agreement was not for lifetime employment as in *Farrow* and *Launay* nor was it of undefined duration as in *Snyder* and *Cooper.* Rather, the agreement Hodge entered into complied with his condition that he be permitted to work until retirement around age 65. As such, it was an oral agreement for long-term employment, not capable of performance within one year from the making of the agreement, and thus is unenforceable under the District of Columbia Statute of Frauds. *See Prouty v. National Railroad Passenger Corp.,* 572 F.Supp. 200, 204 (D.D.C. 1983); *Gebhard v. GAF Corp.,* 59 F.R.D. 504, 506 (D.D.C.1973).

Simply because a contract may be *discharged* within one year (for example, by death) does not take the contract outside the Statute. *See Coan v. Orsinger,* 265 F.2d 575, 577–79 (D.C.Cir.1959). The *Restatement (Second) of Contracts* supports this interpretation of the Statute. Speaking directly to this case, the Restatement of Contracts states:

> [P]erformance of many contracts may be excused by supervening events or by the exercise of a power to cancel granted by the contract. *The possibility that such a discharge or excuse may occur within a year is not a possibility that the contract will be "performed" within a year.* This is so even though the excuse is articulated in the agreement. This distinction between performance and excuse for nonperformance is sometimes tenuous; it depends on the terms and the circumstances, particularly on whether the essential purposes of the parties will be attained. Discharge by death of the

promisor may be the equivalent of performance in the case of a promise to forbear, such as a contract not to compete. Illustrations:

> 5. A orally promises to work for B, and B promises to employ A for five years at a stated salary. [This is the equivalent of *Hodge's* contract; the dispositive fact being that the contract was intended to last beyond one year]. The promises are within the Statute of Frauds.

Though the duties of both parties will be discharged if A dies within a year, the duties cannot be *"performed"* within a year. This conclusion is not affected by a term in the oral agreement that the employment shall terminate on A's death.

. . . .

> 7. The facts being otherwise as stated in Illustration 5, the agreement provides that A may quit [or, in this case, retire] at any time. *The agreement is within the Statute.*

Restatement (Second) of Contracts § 130, comment b (1981) (emphasis added). Thus, the possibility that a discharge or excuse may occur within one year does not take the contract outside the Statute; only the possibility of *full performance* within one year of the making of the contract will render the agreement enforceable.

It is clear that the parties here created a contract for a period longer than one year's duration. *The jury so agreed, as is evident from the jury's award of $175,000 to compensate Hodge for his lost income (less mitigation) due to his discharge by Evans Financial, where Hodge's annual income was about $47,500 per annum.*[3] Thus, the only question is whether the contract could have been *fully performed* within one year.

It is possible that Hodge's contract for employment until retirement not "much beyond 65" could have terminated within one year. Hodge could have died or retired

---

**3.** That the parties stipulated they did not intend to create a contract for "a fixed period of time" is irrelevant. The contract need not run until a fixed date. All that is relevant for our purposes is whether the contract was intended to run beyond one year.

within one year without breaching his contract. The key to determining whether the Statute of Frauds applies is whether Hodge's death or retirement within one year would have resulted in the contract being *fully performed* or merely excused. As quoted above, the Restatement recognizes that sometimes, as here, the distinction between "performance" and "excuse" is tenuous and "depends on the terms and the circumstances, particularly on whether the essential purposes of the parties will be attained." *Id.*

The original opinion for the court held that Hodge's death or retirement within one year would not have resulted in *performance* of the contract, but rather would have constituted an *excuse* for non-performance (or, in Judge Bastian's words "defeasance," *Coan v. Orsinger,* 265 F.2d 575, 577 (D.C.Cir.1959)). This conclusion is supported by the Restatement and its illustrations, quoted above. Hodge's death or retirement within one year would not have resulted in the attainment of the parties' objectives—i.e., service until not much beyond age 65—which is the touchstone for distinguishing between *performance* and *excuse* under the Restatement. The contract here is not similar to a contract not to compete, where the death or retirement of the promisor accomplishes the parties' objectives and is therefore equivalent to performance.

The Restatement illustrations to comment b also support the court's original opinion. Illustration 5 presents the following facts: A orally promises to work for B for five years (note, however, that *any* period extending beyond one year will do). The Restatement states that the contract is *within* the Statute of Frauds even though A could die within one year, because the duties of the parties to the contract would be left unperformed. Illustration 7 presents the same facts, but also specifies that the contract provides that A may quit (or, for our purposes, retire) at any time. The Restatement concludes: "The agreement is *within* the Statute." *Id.* (emphasis added). As with these examples, Hodge's contract was for a term exceeding one year since by his own testimony, the contract

met his requirement of permitting him to work not "much beyond 65." The contract could terminate within one year at Hodge's death or voluntary retirement, but, as with the examples in the Restatement, such termination would not constitute full performance. Hodge's contract thus falls *within* the Statute of Frauds.

### III.

The majority claims that its adoption of a narrow interpretation of the Statute of Frauds will "mollify the often harsh and unintended consequences of the statute." Maj. Op. at 565. But the Statute is not a welfare act. It was designed to protect against the danger of fraud. Because Mr. Tilley, the only other witness to the negotiations at issue here had died before trial, Hodge was able to testify without contradiction concerning the particulars of the oral agreement between the two. This presents precisely the kind of situation that justifies application of the Statute's requirement that the contract be in writing.

I respectfully dissent from the majority's holding that the Statute of Frauds does not bar enforcement of the employment agreement between Hodge and Evans and concur in the reduction in damages called for by the majority opinion.